(37 South. 967.)

No. 15,247.

ST. LANDRY WHOLESALE MERCANTILE CO. v. TEUTONIA INS. CO. OF NEW ORLEANS.*

(Jan. 4, 1905.)

INSURANCE—PROOFS OF LOSS—WAIVER—FINDING OF FACT—PAROL EVIDENCE—INVENTORY.

1. A denial of liability is a waiver of proofs of loss, and whether there was such a denial is a question of fact to be determined primarily by the trial judge, who sat without a jury. The judge found that the preponderance of the evidence showed such denial of liability by the adjuster of defendant on the alleged ground of a violation of the provisions of the "iron-safe clause," relative to keeping the inventory of stock locked in a fireproof safe, etc. Such a finding of fact, where the evidence is conflicting, will not be disturbed unless clearly erroneous.

2. Parol evidence is admissible for the purpose of showing waiver of proofs of loss, although the policy provides that all waivers of any of its conditions must be in writing.

3. An adjuster may waive proofs of loss either directly, or by denial of liability, or refusal to pay on other grounds.

4. A rough inventory, taken in pencil and on tablet paper, subject to revision and correction, and afterwards to be copied in ink in a bound book, according to custom, is not the "complete" inventory contemplated by the "iron-safe clause" to be kept in a fireproof safe or other place of security, especially when the assured was not in default as to the taking of the inventory, and the insurance company. could not have complained if no attempt whatever had been made to take an inventory before the fire.

(Syllabus by the Court.)

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; Edward Taylor Lewis, Judge.

Action by the St. Landry Wholesale Mercantile Company against the Teutonia Insurance Company of New Orleans. Judgment for plaintiff, and defendant appeals. Affirmed.

Gilbert Louis Dupré (Edward M. Hudson, general counsel), for appellant. Lewis & Lewis, for appellee.

LAND, J. Plaintiff sued defendant for $2,250, alleged loss on stock of general merchandise destroyed by fire. The petition set forth that defendant on January 2, 1903, issued its policy of fire insurance on said stock of merchandise, and that the same was destroyed by fire on January 15, 1903. The policy was attached to the petition.

The petition alleged that defendant was promptly notified of the loss, and demand for settlement was made on it, but that said company, through its authorized agent, de-

---

*Rehearing denied February 13, 1905.

nied all liability and refused to pay for said loss.

The petition contained the usual allegation that plaintiff had complied with all the obligations imposed on it by the contract of insurance.

The defendant filed a plea that plaintiff had failed to furnish proof of loss as stipulated in the contract of insurance, and in said plea averred that the allegation contained in the petition that defendant had denied its liability was not true.

This plea was tried and overruled, and thereupon defendant answered, reiterating the said plea, denying generally the allegations of the petition, and setting up as a special defense a violation of the "iron-safe clause," in that plaintiff did not keep the inventory which had been taken securely locked up in the iron safe, and failed to produce such inventory for the inspection of the defendant; plaintiff stating that the same had been destroyed by fire.

There was judgment in favor of the plaintiff, and defendant has appealed.

There are but two issues in the case—one, the alleged failure to furnish proofs of loss; and the other, the alleged failure to preserve the inventory.

1. It is admitted that no proofs of loss were furnished. Plaintiff contends that defendant waived such proofs of loss by denial of liability, as alleged in the petition.

It appears that the policy sued on was issued on January 2, 1903, and that the stock of merchandise insured was destroyed by fire on January 15, 1903. Notice of loss was given, and the adjuster of defendant was sent to Opelousas to investigate the matter. On his arrival he was informed that plaintiff had taken an inventory of the stock on hand subsequent to the issuance of the policy, and that the same had been lost in the fire. This adjuster had an interview with the vice president of plaintiff company, mentioned to him the loss of the inventory,

and required him to sign a "nonwaiver" agreement, as a condition precedent to any investigation or inquiry into the cause or amount of loss. On his declining to do so, the adjuster retired from the field. The vice president testified that, during the interview referred to, the adjuster told him that plaintiff company had forfeited or lost all its rights by the loss of the inventory, and that, unless the nonwaiver agreement was signed, the adjuster could not go into an examination of the loss. The adjuster testified generally that he made no denial of liability, but his testimony shows that he told the vice president that, when he found a violation of any of the conditions of the policy, he could not proceed with the adjustment until he secured a nonwaiver agreement.

The district judge held that the preponderance of the evidence showed a denial of liability, and further that, if there was no express denial of liability, the acts, declarations, and conduct of the defendant induced plaintiff to believe that the loss would not be investigated or settled except on such terms and conditions as the insurance company might impose. In one of his letters the adjuster said:

"When the nonwaiver agreement has been duly signed and returned to me, I will be glad to discuss the matter with the assured, but until then I cannot do any act that might be construed as an admission of liability."

The insurer had no right to demand the execution of such nonwaiver agreement, which was intended to enable the insurance company to take such action as it pleased in the premises, and at the same time to avoid the legal consequences of such action. Such an agreement is never exacted except in cases where, in the opinion of the adjuster, there has been a violation of the conditions of the policy. The same alleged violation which was assigned by the adjuster as a reason for demanding the execution of the nonwaiver agreement is set up in the

answer of defendant as a ground of forfeiture of all the rights of the assured under the policy sued on.

Whether the adjuster expressly denied liability is a question of fact, the solution of which depends on the credit to be attached to the testimony of the particular witnesses. The trial judge was in a far better position than we are to determine such question, and we are not prepared to say that his conclusion was clearly erroneous.

We are satisfied from the evidence that the defendant company relied on the alleged violation of the conditions of the policy as a defense against liability, and induced plaintiff to believe that the loss would not be settled except on such terms and conditions as might be imposed by the insurance company.

Denial of liability will be a waiver of proofs, and a demand for proofs will be treating the policy as valid and a waiver of known defenses. Ostrander (2d Ed.) 229, pp. 530, 531; Id. p. 525. Defendant's assertion of nonliability was inconsistent with a demand for the production of proofs. The very object of a nonwaiver agreement is to avoid a claim of waiver of forfeiture. Clement, Fire Ins. 272.

Under the circumstances of the case, the furnishing of proofs of loss would have been vain and useless, because the defendant company asserted and relied on nonliability on other grounds.

Objection was made to the admission of parol evidence to prove waiver of proofs of loss, on the ground that the policy provided that all waivers of any of its conditions or stipulations must be in writing. In Story v. Insurance Co., 37 La. Ann. 254, it was held that such a clause did not apply to waivers by subsequent agreements, acts, or conduct. It is well settled that a provision against waiver except by writing does not apply to notice and proofs of loss. May on Insurance (4th Ed.) vol. 2, p. 1127, § 473.

113 La.—34

The authority of an adjuster to waive proofs of loss is equally well settled. May on Insurance (4th Ed.) vol. 1, p. 260. He may do so by refusing to pay solely on other grounds. Id. vol. 2, p. 1121. Or by denial of liability. Clement, Fire Ins. p. 48. An adjuster cannot treat a policy as both void and valid. Id. 443. A claim that a policy is void is not waived by a suggestion or advice that assured make proofs of loss, as company might not insist on forfeiture. Id. 446.

2. The next question is the special defense that plaintiff did not comply with the conditions of the "iron-safe clause," in that it did not keep the inventory which had been taken securely locked in a fireproof safe, and did not produce the same for the inspection of the defendant company after the fire. The clause referred to reads as follows, viz.:

"(1) The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"(2) The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in first section of this clause, and during the continuance of this policy.

"(3) The assured will keep such books and inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually opened for business; or failing in this, the assured will keep such books and inventories in some place not exposed to a fire, which would destroy the aforesaid building.

"In the event of the failure to produce such a set of books and inventories for the inspection of this company this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The policy was issued on January 2, 1903, and therefore plaintiff had 30 days from that date within which to take "a complete itemized inventory of stock on hand" as required by first paragraph of the said clause.

It appears from the evidence that prior

to the fire on January 15, 1903, a rough inventory of the stock was taken in pencil and on tablet paper by two employés of the plaintiff company, and the footings entered on the journal. In the ordinary course of business, such inventory would have been submitted to the board of directors or officers of the company for revision, and then copied in ink in a bound book, as is customary among merchants. The tablets referred to were kept on the desk of the bookkeeper, and were destroyed by the fire.

We do not think that such tablets, with the pencil entries thereon, constituted the "complete itemized inventory" contemplated by the contract. They were not intended to be preserved, and constituted merely memoranda for the confection of an inventory in permanent form. If plaintiff company had made no attempt to take an inventory prior to the date of the fire, defendant company could not have complained. Hence the former was guilty of no negligence in not perfecting and preserving the inventory in question. The plaintiff was the proper judge of both the manner of making the inventory and of its form, and such inventory was not "complete," in the sense of the contract, when it was destroyed by fire.

The amount of loss was readily ascertained from the books and invoices, and there is no suggestion of fraud or dishonesty in the pleadings filed by defendant.

Judgment affirmed.