# LOUISIANA REPORTS

## VOLUME 114.

## CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA.

AT TERM BEGINNING FIRST MONDAY OF NOVEMBER, 1904.

(37 South. 988.)

No. 15,188.

ST. LANDRY WHOLESALE MERCANTILE CO. v. SPRINGFIELD FIRE & MARINE INS. CO.*

(Jan. 4, 1905.)

INSURANCE—ACTION ON POLICY.

The issues in this case are the same as in the case of the same plaintiff v. Teutonia Insurance Company, 113 La. 1053, 37 South. 967.

(Syllabus by the Court.)

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; Edward Taylor Lewis, Judge.

Action by the St. Landry Wholesale Mercantile Company against the Springfield Fire & Marine Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Rehearing denied February 13, 1905.

Clegg & Quintero and Kenneth Baillio, for appellant. Lewis & Lewis, for appellee.

LAND, J. The pleadings and issues of fact and of law in this case are the same as in the case of the same plaintiff against the Teutonia Insurance Company of New Orleans, this day decided. 113 La. 1053, 37 South. 967.

The evidence in this case as to a denial of liability by the adjuster of defendant company is much stronger.

Such denial was testified to by three witnesses, whose testimony was controverted by that of two adjusters who were present. The adjuster of the Teutonia Company came on the scene later.

Jonas Roos, the local agent of the defendant company, testified that, after notice of the loss, two adjusters—one representing the defendant company—came to Opelousas to adjust the loss, and at their instance a conference was had with the representatives of

plaintiff company; that at this meeting the adjuster of defendant said to the vice president of plaintiff company:

"You have lost your inventory, and by that have violated your contract, and we do not owe you anything; and, unless you sign a nonwaiver agreement, we cannot go into the details of the loss."

He further testified that the vice president declined to sign the nonwaiver agreement, assigning as a reason that he did not understand the paper, but at the same time told the adjusters that the books, invoices, and all other papers pertaining to the business were open for inspection, and that he courted an investigation of the affairs of the company. This witness further testified that the adjusters refused to make any investigation, and left on the same day.

This testimony of Jonas Roos is corroborated by that of the vice president and of the bookkeeper of plaintiff company.

The following is an extract from the testimony of defendant's adjuster:

"We subsequently met the directors of that company at the office of the Roos-Edwards Agency, and I asked the gentlemen if it was a fact that the inventory had been destroyed, to which they replied affirmatively; and I then told the gentlemen that they had not complied with the provisions of the iron-safe clause of the policy contract, and that it would not be possible to make an investigation of the loss without a nonwaiver agreement. I explained fully to these gentlemen that, if they desired me to go into the loss, I would do so after the signing of the document, but it would be with the distinct understanding that I would not in any manner admit liability."

Both adjusters testified that they neither denied nor admitted liability during said conference.

It is argued that defendant's local agent, Jonas Roos, is a brother of the president of plaintiff company, and throughout the whole business acted in the interests of the assured. The bias of all the witnesses toward the parties litigant should be considered, and, we assume, was considered, by the trial judge. We are not prepared to say that mere bias or interest discredits a witness—especially in a case where all the witnesses on both sides seem to have been more or less biased or interested.

We are not prepared to say that the judge a quo clearly or manifestly erred in giving credit to the testimony of plaintiff's witnesses. The adjuster of defendant company, according to his own testimony, told the representatives of plaintiff company that they had not complied with the provisions of the iron-safe clause of the policy, and that he would not in any manner admit liability, but would investigate the loss if plaintiff company would sign an agreement outside of the contract.

The line between such an attitude and a denial of liability is very shadowy, and it is not difficult to believe that the adjuster went further, and declared that the assured had forfeited their right by loss of the inventory; this being the inevitable inference from his admitted declarations.

The New Orleans Adjustment Company wrote to the local agent at Opelousas as follows:

"We beg leave to advise, as was stated to assured by Mr. Kohlman, that unless a nonwaiver agreement is signed it will be impossible for him to discuss the matter. * * * Please fully explain to the assured that any investigation that we may make is with the distinct understanding, acting under the nonwaiver agreement, that the Company in no wise admits liability."

The position of the adjuster, according to his testimony, was equivocal, to say the least of it. He told the assured that they had not complied with the conditions of the policy, and that he would not in any manner admit liability, and demanded a nonwaiver agreement, the very object of which was to avoid a claim of waiver of the forfeiture incurred by loss of the inventory. He and his company refused to even discuss the loss until the nonwaiver agreement should be executed.

Our conclusions in this case are the same as in the case of the Teutonia Insurance Company, on the question of the waiver of proofs of loss. The evidence is sufficient to show an express denial of liability, and, if not, the attitude and conduct of defendant company implied such denial, and a determination not to investigate or settle the loss, except on its own terms and conditions. Under the circumstances, the furnishing of proofs of loss would have been a vain and useless thing. Clement says that an adjuster cannot treat a policy as both void and valid. Fire Insurance, p. 48.

In the case of the same plaintiff v. The Teutonia Insurance Company, this day handed down, 37 South. 967,[1] we have discussed the authority of an adjuster to waive proofs of loss, and have considered the question of the alleged forfeiture of the policy by the loss of the inventory. What we have there said applies to the issues of fact and of law involved in this suit, and need not be repeated.

We there held that the rough inventory taken in pencil, and on a number of tablets, was not the complete inventory referred to in the "iron-safe clause"; that the plaintiff had 30 days within which to make such inventory, and to transcribe the same in a bound book, as is customary among merchants; and that as plaintiff had, at the date of the fire, more than 2 weeks within which to perfect the inventory and put it in proper form for presentation, the insurance company have no right to complain. When the bookkeeper and his assistant finished the listing and valuation of the goods, the footings were entered in the journal. This circumstance did not change the situation. Until the inventory was transcribed in permanent form as was intended, the plaintiff owed no duty, under the policy, to preserve the same. Plaintiff was at liberty to destroy what had been done, and to make another inventory within the 30 days.

There is no serious contention as to the amount of the loss, and there is no charge of fraud or dishonesty.

Judgment affirmed.