No. 4842.

(Court of Appeal, Parish of Orleans.)

## GUSTAVE C. MONTELEONE vs. SEABOARD FIRE AND MARINE INSURANCE CO.

A. J. Rossi, B. R. Forman for plaintiff and appellee.

E. H. Farrar, Jr., for defendant and appellant.

DUFOUR, J.—Plaintiff sues to recover a total loss by fire on October 12, 1908, of household effects, covered by a policy of insurance for $1,000, issued by defendant on April 14, 1908, and prays for judgment for the face of the policy, together with the attorney's fees and damages authorized to be recovered by Act No. 168 of 1908.

The answer, after setting up a failure to submit proofs

of loss, denies liability on the grounds that the loss was caused by an explosion which preceded the fire and that the building containing the property fell previous to the fire, in consequence of which, insurance ceased under the express terms of the policy.

There is conflict of evidence as to whether proofs of loss were furnished. It appears, however, that defendant tendered plaintiff, for signature, a non-waiver agreement, which the latter refused to sign, whereupon defendant notified him it would have nothing more to do with the loss or its adjustment.

This unauthorized and unwarranted withdrawal by the insurer was equivalent to a denial of liability and waived the requirement of the policy with respect to the necessity of furnishing proofs of loss.

### 113 La. 1053.

It is unnecessary to inquire whether the explosion did or did not precede the fire; it was sufficient to say that the only result to the building was the throwing from their bearings of a few doors and windows, and that the uncontradicted testimony of plaintiff is to the effect that the damage suffered was due exclusively to the fire. This is sufficient to show that the explosion had nothing to do with the loss.

The value of the property destroyed is undisputed and exceeds the amount of insurance, and, upon the facts of the case, the plaintiff is entitled to judgment for the full amount of the policy, and to the other damages unless the legal defense interposed is well founded.

This defense is that the provisions of Act 168 of 1908 allowing attorney's fees and 12% damages to be recovered by plaintiff from any insurer failing to reasonably settle any just loss, are not retroactive so as to apply to policies issued prior to the enactment, and, even if in-

tended to be so, they are void as impairing the obligation of the contract.

No other feature of the act is attacked and no other ground of unconstitutionality is suggested.

The only questions to be considered therefore are:

1. Is the statute constitutional?

2. Is it retroactive in its operation?

The right of the Legislature to enact statutes of this character may not be disputed; if they are remedial and effect the enforcement only and not the substance of the contract, they constitute a valid exercise of legislative authority and are a declaration of the public policy of the State.

They may change the remedy, or the mode of enforcement of the contract, or the penalties attending the breach of a contract already in existence without impairing its obligations, unless such remedy or penalty actually forms part of the contract itself.

To carry out their purposes, such statutes must be liberally construed and may properly be retroactive in their operation.

> 76 N. W. 1072; 189 N. S. 301; Sutherland on Statutory Damages, Vol. II, pp. 643-1073; Cooley on Constitutional Limitations (7th Ed.), p. 410; 76 N. W. 1072.

Passing now to the jurisprudence of our own State, we find that it is broader than that of other jurisdictions in respect to the interpretation to be placed on remedial laws.

In **Scott vs. Duke, 3 An. 253,** the Supreme Court said:

"The distinction between laws impairing the obligation and laws modifying the remedy given by the Legislature to enforce the obligation, was fully recognized by Judge Marsh in the case of **Sturges vs.**

— 249 —

Commonwealth, 4 Wheat. 200. \* \* \* Laws regulating the form of judicial proceedings are remedial laws, and that form depends upon the law in force at the time the proceedings were instituted, without regard to the law at the time of occurrence of the facts upon which they are based. It may even vary, and, in fact, does vary, if before the final decision a new law intervenes which changes the form, **unless that law expressly declares that the pre-existing form shall continue to be followed in the cases then pending.**"

In **Cassard vs. Tracy, 52 An. 856,** after citing that and many other cases, Blanchard, J., said:

"The rule that the terms of a statute or constitution are not to be interpreted as having a retrospective or retroactive operation, unless the language used plainly conveys that intention and is susceptible of no other interpretation, finds no application to remedial statutes or to the remedial provisions of organic laws. Remedial laws are an exception to the general rule, and may have retroactive or retrospective force."

Let us now examine the act in the light of the foregoing cases.

Section 1 makes it the duty of the fire insurance companies to furnish blank proofs of loss to the assured, "whenever any loss or damage shall be suffered in this State from fire." Section 2 declares that the failure to furnish blanks will be considered as a waiver of proofs of loss "in case of loss or damage by fire as provided in the preceding section."

Section 4 provides that the insurance companies shall deliver to the insured, with each policy issued, a copy of this act.

We need not inquire whether or not those sections of the enactment are retroactive; they are not involved in this controversy which rests exclusively on the provisions of Section 3, which alone contains the provisions herein objected to.

Conceding, **arguendo,** that some of them are intended to be prospective only in their operation, we see no reason why a law may not be properly prospective in some respects, and retrospective in others.

Section 3 of the act, so far as pertinent, reads as follows:

> "That **whenever any loss or damage** shall be suffered in this State from fire by any person, firm or corporation upon property insured under a policy of insurance of any fire insurance company doing business in this State, it shall be the duty of the fire insurance company that **has issued** the policy or policies upon receipt of proofs of loss from the assured, to pay the amount due **under its policy or policies**, within sixty days thereafter.  *  *  *

> "And should the company fail to pay, within said time the amount **due the insured under the policy** after demand made therefor, such company shall be liable to pay the holder or holders of such policy, in addition to the amount of the loss, twelve per cent. damages on the total amount of the loss  *  *  * together with all reasonable attorney's fees for the prosecution and collection of such loss."

The text of this section refers to loss or damage which shall be suffered, not to policies which shall be issued; it makes no distinction between losses occurring under policies already issued and those occurring under policies to be issued thereafter.

Had the Legislature intended to restrict the operation of the remedy to losses arising under policies to be issued

after the passage of the statute, it would have said so.

Under the authorities cited, it is clear that we must construe Section 3 of Act 168 of 1908 as applying to policies issued before its enactment as well as to those issued after it.

Counsel for defendant admits that, if the attorney's fees are exigible, the liquidated damages also are, and in this respect the judgment must be amended.

The judgment is amended by adding thereto the amount of one hundred and twenty dollars ($120) as liquidated damages, and, as amended, the judgment is affirmed.

March 7, 1910.

### Dissenting Opinion.

GODCHAUX, J.—I cannot agree with the opinion of the majority of the Court upon the question of the applicability to this controversy of Act 168 of 1908.

The act cannot be considered a remedial statute, but, rather, must be held to be a penal one, in so far at least as the imposition of the 12% damages is concerned. But whether the statute as a whole be considered remedial or not, it is not, by its terms, susceptible of a construction which would make it apply to losses which occur under policies written prior to the enactment of the statute. I do not understand the law to be that simply because a statute is remedial it must necessarily be held to be retroactive, irrespective of what may be the apparent intention of the Legislature. On the contrary, in the consideration of all character of the statutes, remedial or otherwise, the primary and fundamental object is to ascertain the Legislative intention and to give the statute such interpretation as will carry that intention into effect. This intention can be ascertained primarily through a consideration of the language employed and

in interpreting this language the statute as a whole must be considered and not a single, isolated section, paragraph, clause or phrase thereof. Particularly is this true in the present instance where the several sections of the statute are interdependent following one another in logical order, and constituting together an effective whole. It is true that Section 3, separately considered, is susceptible of a construction which would make it applicable to losses occurring under policies written previous to the adoption of the statute. But, on the other hand, when read in the light of the title and other sections of the Act, the intention of the Legislature is clear to have that section, as well as the other sections of the statute, affect only future contracts and losses occurring thereunder.

It was not the intention of the Legislature to have Section 3 apply to one class of losses—namely, those occurring under policies already written—and the other sections of the Act apply to another class of losses, occurring under policies thereafter issued. No such classification of the kind of losses to be treated is made in the title of the Act; but, on the contrary, the title announces, in my judgment, an intention to legislate with reference alone to losses occurring under policies thereafter issued. This intention is strictly carried out in Section 1, Section 2 and Section 4, which, by their precise terms, are confined in their application to that class of losses—that is, losses under policies thereafter issued, and not to losses under policies which are in operation at the time of the passing of the Act. If the opinion of the majority of the Court, in considering Section 3 as applying to losses under policies then in existence, is correct, then I would have serious doubts as to the constitutionality of that section, in view of the fact that the title of the act fails to announce that the Act contains legislation with reference to

then-existing policies or to losses that might occur under such policies.

The construction here contended for, on the other hand, avoids any constitutional question of the title expressing a dual object, or of the act containing matters not expressed in its title.

Referring to the statement that the several sections of the statute are interdependent, an examination of the statute shows that by its terms:

Section 1 refers to policies thereafter written, and provides that notice of loss thereunder shall be given by the assured to the company, and that the company thereafter shall furnish proofs of loss to the assured.

Section 2 provides that if, after having received said notice of loss from the assured, the insurance company shall fail to furnish proofs of loss, then said failure shall constitute a waiver of proofs of loss.

Section 3 follows in logical order and provides that, having received proofs of loss or having waived same, the insurance company shall have sixty days, after receipt or waiver thereof, to settle the loss, under certain penalties therein prescribed for failure to do so.

Section 4 prescribes that a copy of this act shall be physically attached to each policy and shall be considered part and parcel thereof.

Considered in this light, and it being apparent that the object of the act, as a whole, was to regulate and prescribe the duties of the insurance companies at the various stages of adjustment which precede the final settlement of a loss, it is clear that all the sections were intended to apply to the same class of loss—that is, not losses occurring under policies then in force, but these occurring under policies thereafter written. It was never the intention of the Legislature to make three sections of the

act apply to one class of losses and one single section of the act apply to another class.

In **Thompson vs. Traders' Ins. Co., 169 Mo. 12 (68 S. W. 889),** it was held that the 10 per cent. damage clause in a statute similar to our own was a law relating to the performance of the insurance contract and not to the remedy.

In Arkansas, where the language of the statute is practically identical to that employed in Section 3 of our Act, the Court refused to give it a retrospective effect so as to make it apply to policies which were not in existence at the time of the passing of the act.

**Arkansas Mutual Fire Ins. Co. vs. Claiborne, 102 S. W. 226 (Ark., 1907).**

It is my opinion that, in as much as the loss under consideration occurred under a policy which had been issued prior to the enactment of the statute of 1908, that statute has no application, and that consequently the imposition of the statutory attorney's fees and damages authorized by the act was erroneous.

I respectfully dissent as to that portion of the opinion and decree.

March 7, 1910.

Rehearing refused March 21, 1910.

Writ granted by Supreme Court April 26, 1910.