(107 So. 489)

No. 25483.

THOMPSON v. STATE ASSUR. CO., Limited, OF LIVERPOOL, ENGLAND.

(Feb. 1, 1926.    Rehearing Denied March 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Insurance** ⬡➡559(1), 561—**Failure of insured to furnish proofs of loss under fire policy held waived, where blanks for making such proofs were furnished after insurer had denied liability on policy and nonwaiver agreement had been signed (Act No. 168 of 1908).**

Insurer waived failure of insured to furnish proofs of loss under fire policy, where, if blanks for making such proofs were furnished in accordance with Act No. 168 of 1908, it was long after insurer had denied liability on policy and after all of insured's books and papers had been given to adjuster and nonwaiver agreement had been signed.

2. **Insurance** ⬡➡335(1).

Obligations of insured under iron-safe clause constitute promissory warranty on his part.

3. **Insurance** ⬡➡335(1)—**Policy of fire insurance on merchandise held invalidated, where insured failed to comply with iron-safe clause.**

Policy of fire insurance on stock of merchandise *held* invalidated, where insured made no inventories and kept no books or papers which would clearly and plainly present a complete record of business transacted and failed to preserve books in a safe place in compliance with iron-safe clause.

4. **Estoppel** ⬡➡71 — **Defense of incendiarism held unavailable in suit on fire insurance policy, where insurer disclaimed that insured was responsible for fire.**

Insurer *held* not entitled to defend suit on fire policy on ground of increased hazard resulting from insured's alleged incendiarism, where it disclaimed that insured was responsible for fire.

5. **Insurance** ⬡➡335(5)—**Forfeiture of entire fire policy is not decreed for violation of iron-safe clause, where it was restricted to insured's stock of merchandise.**

Under fire policy insuring insured's stock of merchandise, fixtures, and household furniture separately, insurer *held* not entitled to forfeiture of entire policy for violation of iron-safe clause, where it was restricted solely to stock.

6. **Judgment** ⬡➡255—**Insured prevailing in suit on policy held not entitled to recover reasonable attorney's fee, in absence of proof thereof.**

Insured prevailing in suit on fire policy *held* not entitled to recover reasonable attorney's fee, in absence of proof authorizing such a fee.

O'Niell, C. J., dissenting in part.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Action by Joseph J. Thompson against the State Assurance Company, Limited, of Liverpool, England. From a judgment rejecting his entire demand, plaintiff appeals. Amended and affirmed.

Edward A. Parsons, of New Orleans, for appellant.

John C. Hollingsworth, of New Orleans, for appellee.

THOMPSON, J.    This suit is to recover the amount of a fire insurance policy with 12 per cent. penalty and $250 attorney fees.

The policy was issued on April 6, 1920, and covered the following items, to wit: $1,500 on stock of groceries, merchandise, etc.; $500 on fixtures, shelves, counters, etc.; and $250 on household furniture, family stores, wearing apparel, etc.

The fire which occasioned the loss occurred October 14, 1920.

After a trial on the merits in the lower court, the entire demand of plaintiff was rejected, and he presents this appeal.

The defendant urged in the lower court and reasserts here four defenses against liability to any extent on the policy sued on. These defenses we shall state and discuss in our own order.

1. The first defense is that the plaintiff failed to furnish the defendant with sworn proofs and sworn statements of loss.

It appears that within a few days after the fire, and after the defendant had been notified of the fire, several conferences were had between the plaintiff and the adjuster em-

ployed by the defendant. At one of these conferences the adjuster requested the plaintiff to bring to him his books and papers relating to his business and to the loss he claimed to have sustained. At this conference, the adjuster also told the plaintiff that he had no proposition of settlement or adjustment of the loss to make to him whatever.

He further informed the plaintiff that the iron-safe clause had been violated; that his books had been found on the counter instead of in the safe, and that was the reason, he (the adjuster) supposed, for the insurance company not being inclined to settle.

The proof of this statement as to the violation of the iron-safe clause and disclaimer of liability was elicited by defendant's counsel on cross-examination of the witness Pilsburry, who was present at the conference.

In compliance with the request of the adjuster as already noted, the plaintiff delivered to the adjuster all of the books and papers pertaining to his business and furnished the adjuster all of the information within his possession concerning the business and the loss he had sustained.

These books and papers remained in the possession of the adjuster until they were called for by the plaintiff just a few days before the trial.

In this connection it may be well to state that after all the books and papers had been delivered to the adjuster, and after disclaimer by the adjuster of any liability on account of the violation of the iron-safe clause, a nonwaiver agreement was exacted by the adjuster and was signed on October 21, 1920.

Act 168 of 1908 requires the insurance company in case of loss by fire to furnish the assured blank forms of statements and proofs of loss after having been informed of such loss by fire, and in case the company fails or neglects to furnish such blank forms of proofs of loss, then such company is deemed to have waived the requiring of any statement or proof of loss at the hands of such insured, and upon suit being brought upon the policy, the company shall not be heard to complain of the failure of the insured to furnish such statements or proofs of loss.

It is claimed that the defendant did furnish the plaintiff with the necessary blanks for proofs of loss, but we seriously doubt if such contention has been sustained by the evidence.

If, however, such blank forms were furnished, they were so furnished long after the defendant had denied liability on the policy and after all the books and papers had been turned over to the adjuster, and the nonwaiver agreement had been signed, as is shown by the letter of the adjuster dated November 25, 1920.

Under the circumstances recited, the furnishing of proofs of loss would have been vain and useless.

The defendant's assertion of nonliability is inconsistent with its demand for the production of proofs of loss.

In the case of St. Landry Wholesale Mer. Co. v. Teutonic Ins. Co., 37 So. 967, 113 La. 1057, it was said by the court that an agreement of nonwaiver is never exacted by the insurance company except in cases where, in the opinion of the adjuster, there has been a violation of the conditions of the policy.

[1] We are of the opinion under the facts of this case that the defendant cannot be heard to urge the failure of the plaintiff to furnish proofs of loss, even if delivery of the blanks had been actually made by the company.

2. The next defense we shall notice is the violation of the iron-safe clause.

This clause of the policy provides: (1) That the assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and shall make one in detail within 30 days of issuance of the policy

if no such inventory had been taken within the twelve calendar months prior to the date of the policy; and (2) that the assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory; and (3) that the assured will keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fire proof safe at night and at all times when the building in which the stock is kept, is not actually open for business, or, failing in this, that the assured will keep such books and inventories in some place not exposed to a fire which would destroy the building in which the stock insured is kept.

[2] That the obligations of the insured under the iron-safe clause constitute a promissory warranty on the part of the insured is well settled in the jurisprudence of this state.

"We cannot relieve plaintiff of his obligations under the iron-safe clause, which was declared a warranty in the policy contract." Morris v. Stuyvesant Fire Ins. Co., 82 So. 586, 145 La. 473, citing Germier v. Springfield Fire Insurance Co., 33 So. 361, 109 La. 341; St. Landry Wholesale Mer. Co. v. New Hampshire Fire Ins. Co., 38 So. 87, 114 La. 146, 3 Ann. Cas. 821.

We deem it unnecessary to refer in detail to the evidence produced on the issue under consideration.

It would serve no useful purpose to do so. Suffice it to say that the evidence not only fails to show even a substantial compliance with the different warranties expressed in the clause of the policy referred to, but, on the contrary, it is conclusively established by the testimony of the plaintiff himself, and that of his clerks and bookkeepers, that no inventories were made and no books and papers were kept by the plaintiff which would "clearly and plainly present a complete record of the business transacted." It is true that some sort of an inventory was made within the 12 calendar months immediately preceding the date of the policy, and another was made more than 30 days after the policy was issued; but neither of these inventories was complete, and they did not present anything like a complete record of the stock of goods on hand at and after the plaintiff had acquired the business and the purchases made subsequent to the issuance of the policy.

The plaintiff does not even pretend that a set of books was kept as required, nor that any record was made of the purchases and sales. The only means by which the amount of purchases could be ascertained, after the fire, was to obtain a duplicate invoice from the several merchants from whom such purchases were made.

The method of keeping account of the daily sales was to enter the same on a slip of paper and to place this slip on a pointed or stick file, and the most of these were destroyed by the fire. The plaintiff frankly admitted on the trial that he knew nothing about the books and had no means of telling the amount of purchases except by getting invoices from the merchants, and he could not determine from any records kept or preserved what the daily sales amounted to. And this is substantially the testimony of the plaintiff's clerks.

But more than this, it is admitted that whatever papers and records the plaintiff had of his business were not in the safe on the night of the fire, but were on a little counter in the front room on the left side of the store; that room being a part of the same building and exposed or subject to the same fire.

[3] The failure to preserve the books and papers by putting them in an iron safe, or in some place removed from a dangerous proximity to the insured premises, was as much a flagrant and inexcusable violation of the iron-safe clause as was the failure to keep a set of books or other records of the business transacted and likewise vitiated the policy.

3. The third defense is that the property

insured, in that portion of the building occupied as a residence, as well as the books, papers and invoices in the store and rooms and counter, on the date of the fire or thereabout, had been soaked with kerosene oil, which increased the hazard beyond that intended and ordinarily covered by the policy, and thereby vitiated the said policy.

The circumstance just mentioned undoubtedly indicated that the fire was incendiary rather than accidental, but we do not see how the act of spreading and distributing the oil in the manner as stated can be regarded as an extrahazard independent and separate from the act of setting fire to and burning the building and its contents. The latter act, the actual burning, was the result and consequence of the act which is claimed constituted an increase of the hazard insured against.

The two acts, that of applying the oil and that of touching the match, were so connected and associated the one with the other in point of fact as well as in motive and purpose as to be inseparable.

In the course of the trial the defendant's counsel expressly declared that the case was not defended on the ground that the plaintiff had either burned or procured the burning of the contents of the building.

[4] In view of this positive disclaimer that the plaintiff was responsible for the fire, we are unable to conceive how the defendant can be heard to urge that the plaintiff was guilty of applying the oil, which as we have said could have only been done with the purpose in view of burning the building and its contents.

Such a contention is obviously inconsistent with the defendant's judicial admission.

If the plaintiff did not burn nor procure the burning of the insured property, he certainly cannot be held responsible for spreading the oil which could have only been intended to facilitate and accomplish that result.

4. The fourth and last ground of defense is that the policy is indivisible and that the violation of the iron-safe clause operated a forfeiture of the entire policy—that on the fixtures and household furniture as well as that on the stock of merchandise.

It must be admitted that there are some authorities to the effect that contracts of insurance issued in consideration of a single premium in a gross amount and for a gross amount of insurance are indivisible, but we do not find it necessary in this case to review these authorities nor to commit ourselves to that doctrine.

[5] The defendant in the present case is bound by the terms of its policy contract. In that contract it is expressly declared that the iron-safe clause applies only to the item on stock.

As previously stated, there were three items insured with separate amounts opposite each item. The stock constitutes the first item, the fixtures the second item, and the household furniture the third item.

Certainly if by the terms of the policy the provisions of the iron-safe clause were restricted to the stock or merchandise item, the defendant is in no position to claim a forfeiture of the entire policy on the ground of failure to comply with the clause stated.

There was some of the insured property which was not destroyed and was sold under an agreement. This property brought $267.-94, which amount was allowed as a credit on the amount of the policy in the plaintiff's petition.

It is stated in the supplemental brief of plaintiff's counsel that the salvaged property was groceries and merchandise and covered by that item of the policy, but there is no evidence in the record going to show within which item of the policy the property referred to was included.

If said salvaged property belonged to the stock of merchandise for which no recovery is allowed, then the amount should not be deducted from the other items insured. On

the other hand, if it was included in either or both the second and third items insured, then clearly the amount should be deducted from said items.

In the absence of any evidence defining the class of property saved from the fire, we have determined to apportion the credit.

The proceeds of the property saved amount to practically 12 per cent. of the entire policy. That percentage will therefore be adopted as a basis for the deduction from the two items of the policy on which plaintiff is allowed to recover.

The plaintiff is likewise entitled to 12 per cent. penalty on the amount recovered on the policy.

[6] The statute also provides for a reasonable attorney fee based on the amount of the loss determined and allowed by the court, and while the plaintiff claims such fee, there is no proof in the record which would authorize the court to assess such a fee against the defendant. In the absence of such proof, the court cannot say what would be a reasonable fee for the attorney.

It is therefore ordered that the judgment appealed from be and it is amended so as to allow the plaintiff the sum of $750 less a credit of $90 for salvaged property with 5 per cent. per annum interest on the amount allowed from December 14, 1921, till paid.

It is further ordered that there be judgment in favor of plaintiff for 12 per cent. penalty on the net amount herein allowed. As thus amended, the judgment appealed from is affirmed at the cost of defendant in both suits.

O'NIELL, C. J., dissents from the ruling that the defendant could not defend on the ground of increased hazard with pleading incendiarism when the facts regarding the increased hazard showed incendiarism.

ROGERS, J., recused.