PHOENIX ASSURANCE COMPANY OF LONDON v. M. STENSON.

Decided February 10, 1904.

**1.—Insurance—Evidence—Charge.**

Evidence in an insurance case held not to warrant a peremptory instruction to find for defendant.

**2.—Insurance—Preservation and Appraisement After Fire—Admission.**

An insurer, having admitted liability except so far as it might establish its defenses thereto, had the burden of showing a substantial breach of a clause in the policy relied on in defense requiring the insured to preserve the property not destroyed and submit to appraisement in case of disagreement as to its value; and this burden was not met where, after keeping it for three days, without demand for an appraisement, he sold it to a creditor,—such time being not an unreasonable one for the insurer to decide whether to demand an appraisement.

**3.—Insurance—Inventory—Policy Construed.**

A clause in an insurance policy required the assured to preserve accounts from date of inventory "and also from date of last preceding inventory, if such has been taken, and during the continuance of this policy," and to keep and produce "such books and inventory, and also the last preceding inventory, if such has been taken" under peril of avoiding the policy. Held, under the rule requiring warranty clauses to be construed most strongly against the insurer, that this required the production of only the inventory last taken, where but one was taken during the continuance of the policy.

**4.—Charge.**

An instruction stating the matters required of a party in the exact language of his contract undertaking them, may be objectionable for that very reason, where only substantial compliance could be required of him.

Appeal from the District Court of Falls. Tried below before Hon. Sam R. Scott.

*Alexander & Thompson, Z. I. Harlan,* and *C. F. Thomas,* for appellant.

*Clark & Bolinger* and *H. N. Atkinson,* for appellee.

KEY, ASSOCIATE JUSTICE.—This is a suit on two fire insurance policies, and resulted in a verdict and judgment for the plaintiff, from which the defendant has prosecuted a writ of error. In order to obtain the right to open and close the argument before the jury, the defendant filed in the court below a written admission under rule 31, admitting that the plaintiff was entitled to recover the amount sued for, unless the defendant established by proof one or more of the defenses affirmatively pleaded by it.

The trial judge instructed the jury to find for the plaintiff, unless it was made to appear that he caused the burning of the property covered by the policies.

The defendant pleaded breaches of the iron safe clauses and the clauses in reference to appraisement and salvage, and requested several instructions on those subjects, which instructions were refused. All except two directed a verdict for the defendant. The two referred to read as follows:

"The policies sued on provide that in the event of a fire the assured

shall separate the damaged from the undamaged personal property, put it in good order, make a complete list of the same, showing the quantity and cost of each article, and the amount of damage thereto. And they further provide that the amount of loss shall be ascertained or estimated by the insured and the insurer; or, if they differ, then by appraisement; and that when this value and damage has been ascertained, it shall be optional with the insurance company to take all or any part of the articles at such ascertainment or appraised value. If you find and believe from the evidence that the assured sold and disposed of the property not destroyed by the fire after the fire, and without giving the insurance company an opportunity to ascertain the value of the same, and without giving the insurance company the opportunity to take the same at its then value, then you will find a verdict for defendant. In this connection you are instructed that the insurance company would have a reasonable time after the fire in which to ascertain with the assured the damage done by the fire, and the value of the property not destroyed."

"You are instructed in this case that the policies sued on provide that the assured shall, if he has taken two inventories in his business described in the policies sued on, preserve and present them and each inventory after the fire to the insurance company, or the policies shall be null and void. They also provide that the assured shall keep a record of all his purchases and all his sales made from the taking of next to the last inventory up to the fire, and shall preserve said record and present the same to the insurance company after the fire. If you find and believe from the evidence that the assured did take an inventory in January, 1896, and that he omitted to keep said inventory in a fireproof safe at night and at all times when the store was not actually open for business; and that the fire which destroyed the insured property occurred at a time when the store was not actually open for business; and that said inventory was destroyed by said fire; and that the same has not been produced to the insurance company since said fire; then your verdict will be for the defendant.

"You are further instructed that if you find and believe from the evidence that the records kept by the assured in his business did not show all his purchases made from the taking of the inventory of January, 1896, then your verdict will be for the defendant.

"You are further charged that if you find and believe from the evidence that the record as kept by the plaintiff in his business described in the policies sued on did not contain a complete record of his sales made from the taking of said next to the last inventory, then you will find for the defendant."

Each policy contains the following provision:

"Iron Safe Clause.—The following covenant and warranty is hereby made a part of this policy:

"(1)   The assured will take a complete itemized inventory of the stock on hand at least once in each calendar year, and unless such in-

ventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days from the issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"(2)   The assured shall keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in the first section of this clause; and also from date of last preceding inventory, if such has been taken, and during the continuance of this policy.

"(3)   The assured shall keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or failing in this, the assured will keep such books and inventories in some place not exposed to fire which will destroy the aforesaid building, and unless such books and inventories are produced and delivered to this company for examination after loss or damage by fire to the personal property insured hereunder, this policy shall be null and void, and no suit or action shall be maintained hereon.

"It is further agreed that the receipt of such books and inventories, and the examination of same, shall not be an admission of any liability under the policy, nor a waiver of any defense to the same.

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall, in no event, exceed what it would cost the assured to repair or replace the same with material of like kind and quantity.   Said ascertainment or estimate shall be made by the assured and this company, or if they differ, then by appraisers, as hereinafter provided, and the amount of loss or damages having been thus determined, the sum for which this company shall be liable pursuant to this policy, shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proofs of the loss have been received by this company, in accordance with the terms of this policy.   It shall be optional, however, with this company to take all or any part of the articles at such ascertainment or appraised value.

"If the fire occur the assured shall give immediate notice of any loss thereby to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating quantity and cost of each article, and the amount claimed thereon.

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the assured and this company each selecting one, and the

two so selected shall choose a competent and disinterested umpire. The appraisers together shall then estimate the loss, stating separately sound value and damage, and failing to agree shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss.

"This company shall not be held to have waived any condition of this policy, or any forfeiture thereof, by any act or proceeding relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after notice, ascertainment, estimate and satisfactory proofs of loss have been received by this company, including award by appraisers when appraisal has been required.

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the assured with all the foregoing requirements."

The record contains testimony which supports the verdict, and the latter is not assailed in this court.

*Opinion.*—The first, second, third and fourth assignments of error complain of the action of the trial court in refusing special instructions directing a verdict for the defendant. We overrule these assignments and hold that the evidence was not of a character on any phase of the case to warrant a peremptory instruction.

The fifth assignment is addressed to the action of the court in refusing the special charge set out above on the subject of appraisement. The undisputed testimony shows that the plaintiff kept the remnant of the property that was not destroyed by fire for three days, after which he turned it over to one of his creditors, for the benefit of his creditors. No testimony was offered tending to show that during the three days referred to the insurance company sought to avail itself of the provisions of the policy relating to the undestroyed property. The defendant did not aver in its answer that it sought to avail itself of that provision of the policy, and that the plaintiff refused to agree with it as to the value of the salvage and refused to submit that question to arbitration in the manner prescribed by the policy. It alleged that the plaintiff failed to separate or list the property, and immediately after the fire sold and disposed of it, thereby depriving the defendant of the opportunity granted under the policy of taking the salvage at its value, as provided in the contract.

If not by force of the rule of law applicable to such contracts, then by reason of the terms of the written admission, by which the defendant obtained the right to open and close the argument, the burden rested upon it to show a substantial breach of the provision of the contract relied on, and this we think the testimony failed, in essential particulars, to do. In the absence of testimony showing unusual conditions, we think three days was ample time for the insurance company to claim the benefit of the provision of the policy relating to salvage; and the company remaining silent during all that time, we think it must be

held to have waived its rights in reference thereto, and that the plaintiff did not breach the contract by disposing of the salvage as he did.

We have also reached the conclusion that the other special charge set out above was properly refused. Each policy required the assured to take an inventory once in each calendar year, and required him to keep such inventory, and also the last preceding inventory, if such had been taken, securely locked in a fireproof safe, etc. The first policy was issued May 15, 1896, and the second one on September 12, 1896. The testimony shows that two inventories had been taken, one in January, 1896, and the other in July, 1896. Thus it will be seen that when the second policy was issued, two inventories had been taken during the calendar year; and in reference to this policy, we hold that the plaintiff was not required to produce both, but only the one made July 25, 1896. We so hold because in our opinion, the clause of the contract referring to the "last preceding inventory, if such has been taken," is, to say the least, ambiguous, and may be construed to mean the last inventory that was taken before the issuance of the policy. And, applying the rule which requires warranty clauses in such contracts to be construed most favorably in behalf of the assured, we hold that such is the meaning of the clause referred to in this contract; and that when the plaintiff produced the inventory of July, 1896, he complied with that provision of the contract in so far as concerned the policy issued in September, 1896. And as the charge under consideration placed a different construction on the contract, it was properly refused.

We may also add that while the refused instruction seems to have followed the language of the contract, it was perhaps objectionable for that very reason. Substantial compliance with the provisions of the contract was all the duty that rested upon the plaintiff, and the jury might have been misled by the refused instruction on account of its literalism.

There is no assignment of error which complains of the action of the court in not submitting to the jury, under proper instructions, the issues raised by the pleadings and evidence under the iron safe clause of the contract, and therefore we find it unnecessary to decide whether or not the admissions made by the defendant, in order to obtain the opening and closing argument, eliminated those issues and narrowed the case to the one issue submitted to the jury.

There are some other questions presented in the briefs, some of which were ruled on when the case was here before, and upon all of which we decide against plaintiff in error.

These views lead to the conclusion that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused by the Supreme Court, May 2, 1904.