Statement of the Case.
MONROE, X
Plaintiffs sued' the defendants named in the caption on two policies of fire insurance, the one for $5,000, and the other for $2,000, covering a stock of merchandise in a store in Farmerville; each of the policies containing the three-fourths value clause, and each running from October 2, 1909, to October 2, 1910. They allege that the property insured was totally destroyed by fire on November 1, 1909, and that its value exceeded, by one-fourth, the aggregate of the amounts called for by said policies, and they pray for judgments, according to said contracts. There were two suits originally, but, as the issues are the same in both, they were consolidated for the purposes of the trial, and have been brought here in one transcript. The defenses set up are: That plaintiffs failed to give notices and make proofs of loss; failed to preserve their “preceding"’ inventory; failed to keep a set of books showing a complete record of their business; failed to keep such inventory and books in an iron safe, at night and when the store was not opened for business; and failed to produce the same, when called on — all, as required by their policies. It is shown, beyond dispute, that the property insured was totally destroyed by fire on the night of November 1, 1909; that notice of the fire was promptly given; that defendants sent their representatives to adjust the loss; that an inventory had been taken on September 7, 1909, and was produced when called for; that plaintiffs had kept a book showing all their purchases, another showing all their cash sales, and still another showing their credit sales; and that they, also, were produced when called for.
One of the adjusters, from the data thus furnished, found the loss to be $6,891.99, as follows’:
Inventory, 7th Sept., 1909, corrected $7,342 51 Less — not covered....... 24 50
$7,318 01
Add purchases since, as gone into store .......................... 871 78
$8,189 79
Deduct sales, cash.......$ 725 65
Sales Nov. 1,1909, not recorded, but said to be.. 21 00
' $ 740 65
Sales as per petty ledger 354 53
$1,101 18
Profit 15%............. 143 64
■-- $ 957 54
$7,232 25
Add freight, as per records G. R. R. office .......................... 22 47
$7,254 72
Depreciation 5%.................. 362 73
Value and loss................ $6,891 99
Deduct for % value clause %...... 1,722 99
$5,169 00
The item of $22.47, “freight,” which appears on the foregoing statement was obtained from certain freight bills, which the adjuster obtained from the railroad office; but it is evident that plaintiffs could not have had delivered to them $8,189.79 worth of goods for $22.47; and, in order to ascertain the value of the goods in the store at the time of the fire, we should add, to the invoice price, the entire cost of getting them there, including all the freight and all the drayage charges. On the other hand, though the policy sued on provides for deduction on account of depreciation, it does not fix the amount, and we are inclined to think, in view of the comparatively small stock kept by plaintiff, *587 the short time (say, 14 months) during which they had been in business, and the fact that they bought frequently, that 5 per cent, is rather a liberal allowance for depreciation. Again, it appears that, in the spring, one of the plaintiffs had made a purchase of shoes, in St. Louis, and contracted for others, to the amount of $890.40, which were to be shipped in October. They were, however, shipped in August, and, as plaintiffs did not expect them at that time and were not prepared to pay for them, they decided not to open the cases until they could correspond with the merchant who had shipped them. Hence the eases were not opened and the shoes were not inventoried on September 7th; but they were opened after that time and were in the stock that was destroyed by the fire. There were also some barrels of flour in the stock that was burned, which had arrived on the night, but one, preceding the fire, and concerning which we shall have something more to say.
The judge a quo, being of opinion that the defenses set up were not sustained, took, as the basis of his judgment, the $6,891.99, found by the auditor to have been the value of the goods burned, to which he added $890.40, as the value of the shoes, and $166.75, as the value of 29 barrels of flour, not included in the calculation of the auditor, making a total of $7,949.26, for three-fourths of which he gave judgment, condemning the Franklin Compány for five-sevenths and the Phoenix for two-sevenths of that amount, also condemning them, under act 168, of 1908, for attorney’s fees.
Opinion.
[1] Defendants do not urge the alleged want of notice and failure to make proof of loss, set up in their answers; the facts being that the notices were given, or waived, that proof of loss was made in one case, whilst in the other the defendant failed to furnish the blanks, and that both defendants, distinctly and in writing, denied all liability. There was therefore no basis for the defenses mentioned. Act 168 of 1908; St. Landry Wholesale Mercantile Co. v. Teutonia Ins. Co. of N. O., 113 La. 1057, 37 South. 967.
[2] It is said that plaintiffs failed to comply with the promissory warranty, contained in the policies, with respect of the preservation of the inventory preceding the last one taken. The evidence does not make it clear, however, that such an inventory was in existence when the policies sued on were issued. An inventory had been taken in January, 1909, and another less than two months before the fire. The one last taken was produced, but the other is shown to have been lost, or destroyed, though whether before or after the making of the contracts sued on does not appear. Moreover, the language of the contracts, with respect to the last preceding inventory, has been held to refer to the inventory immediately preceding the fire. Continental Insurance Co. v. Waugh, 60 Neb. 348, 83 N. W. 81; Phoenix Ins. Co. v. Stensen, 34 Tex. Civ. App. 471, 79 S. W. 867. In the case last cited, it was held that the language of the policy was, to say the least, ambiguous, and, that being the case that the rule which requires warranty clauses in such contracts to be construed most favorably to the assured “should be applied.”
[3] We have found that plaintiffs kept a book showing their purchases, another showing their cash sales, and a third showing their credit sales, which latter were small in proportion to the cash sales. We have also found that those books were produced and delivered to defendants when called for. The complaint is made that the book in which the cash sales were entered did not specify the goods that were sold, but contained merely entries of the cash received in payment, with the dates of such receipts. Plaintiff testifies that that is the customary way of *589 keeping books in that part of the country, and we conclude that it met the requirements of the case, since defendants’ representatives were thereby enabled, through independent investigations, to arrive at and approximately concur in, the amount of the loss, save as to the shoes, the circumstances connected with which have been stated; and the flour, the story of which is as follows:
It was the custom in Farmerville for one merchant to order a car load of flour, which upon its arrival, would be divided with the others, and, plaintiff having ordered a car load of, say, 165 barrels, and it having arrived on the night of October 30th, most of it was delivered to other merchants, from the car, and only the portion which plaintiff reserved for himself, less, as he says, 6 barrels, were removed to the store. The judge a quo found the number of barrels thus removed to the store to be 29, but we find a smaller number. Thus: There were 165 barrels in all, of which, 10 barrels were delivered to Cole, 50 barrels to Stancel, 60 barrels to Hartman, 15 barrels (or, say, $92.45 worth) to Turnage, and 7 barrels to McHelvy, making a total of 143 barrels, and leaving but 22 barrels that could have gone to the store. Defendants’ counsel contend that it appears from the testimony of the two adjusters that plaintiff (J. B. Clark) gave them to understand, when they were inquiring about the loss, that the entire ear load of flour had been destroyed in the fire, and those gentlemen, no doubt, received that impression; but, after considering the testimony of plaintiff, in connection with all the circumstances, we do not think that he intended to convey it, and defendants have not charged him with either fraud or false swearing. The judgments appealed from must, however, be reduced by the value of seven barrels of flour, or $40.25.
It is therefore ordered, adjudged, and decreed that the principal amount of the judgment against the Franklin Insurance Company be reduced to $4,229.75 and the principal amount of the judgment against the Phoenix Assurance Company be reduced to $1,691.90. It is further decreed that, as thus amended, the judgments appealed from be affirmed; plaintiffs to pay the costs of the appeal.