### No. 9697

### Orleans

---

### BLOCK v. DETROIT FIRE & MARINE INSURANCE CO.

---

(May 23, 1927.  Opinion and Decree.)
(June 20, 1927.  Rehearing Refused.)

---

*(Syllabus by the Court)*

1. **Louisiana Digest—Insurance—Par. 33, 37, 93.**
In a suit to recover on a fire insurance policy where defendant denies liability for failure to comply with iron safe provision of policy, proof that plaintiff, who acted in the best faith, substantially complied with those provisions, will suffice for recovery.

Appeal from Civil District Court. Div. "F". Hon. Percy Saint, Judge.

Action by Miss Esther Block, plaintiff and appellee, against Detroit Fire · and Marine Insurance Co., defendant and appellant.

There was judgment for plaintiff and defendant appealed.

Judgment amended.

Weiss, Yarrut and Stich, of New Orleans, attorneys for plaintiff, appellee.

Milling, Godchaux, Saul and Milling, of New Orleans, attorneys for defendant, appellant.

JONES, J. This is a suit to recover Five Hundred ($500.00) Dollars on a fire insurance policy, One Hundred ($100.00) Dollars attorney's fees, and twelve per cent damages.

Plaintiff alleges the issuance of the policy by defendant on January 27, 1921, for Five Hundred ($500.00) Dollars to cover stock and fixtures in the millinery store of plaintiff at 1844 Dryades; the payment of the initial premium, the complete destruction of the store and contents, exceeding in value amount of policy, by fire on October 20, 1921; *compliance by plaintiff and offer to comply with all conditions precedent under the contract.*

Defendant admits issuance of policy and payment of premiums, but denies liability on account of failure of plaintiff to comply with the Iron Safe Warranty in the policy, which reads as follows:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

3. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business or, failing in this, the assured will keep such books and inventory in some place not exposed to a fire which would destroy the aforesaid buiding.

4. In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void and such failure shall constitute a perpetual bar to any recovery thereon."

Seven witnesses testified for the plaintiff and none for the defendant.

The evidence shows the following facts:

(1) That plaintiff, who had been in the millinery business in this city for ten or fifteen years prior to the fire, lived in the house adjoining the store on Dryades street with her sister, Miss Brunette Block, who managed the business and had entire charge of the store.

(2) That the books, consisting of an invoice book, a ledger and a cash book, were kept by Lazard L. Block, a brother, without compensation, who had been for many years in the same kind of business at Frenchmen and Royal streets in this city.

(3) That this brother came to the store on Dryades street two or three times a week regularly, made the entries in the books from memoranda and locked the books up in an iron safe of which he alone knew the combination.

(4) That all the invoices and bills were kept on a file and regularly entered by him in the invoice book, that the entire business was done for cash and all the cash was turned over each day to Miss Brunette Block, who kept it until Mr. Block came, in an iron box in the so-called office.

(5) That Miss Brunette Block also kept memoranda of all cash sales, which were entered regularly in the cash book by Mr. Block, two or three times weekly.

(6) That a complete and detailed inventory had been made in July, 1920, and placed in the iron safe, where it was at

time of fire, and a similar inventory had been made in July, 1921; and likewise placed in the safe, where it was when fire happened; that an incomplete inventory had been made in December, 1920, and had not been placed in the safe, but had been kept by the manager for her own convenience, and a fourth complete and detailed inventory had been finished on October 17, 1920, three days before fire, at the instance of certain creditors, and had been sent to the creditors, but had not been placed in the safe and was not there on October 20, 1921.

(7)   That this last inventory which had been tendered to defendant before suit and refused, was offered and filed in evidence and plaintiff offered to prove loss by other documents and data; also a proof of loss which was offered in evidence by defendant.

(8)   That the fire, which broke out some distance from plaintiff's store, consumed the entire block and the debris was guarded for several days by a cordon of police and firemen to prevent theft, as several attempts were made to rifle the ruins.

(9)   That the iron safe was seen among the ruins the day after the fire, but Lazard Block found when he tried to open it three days later and remove the books that the lock had melted.

(10)   That the safe had been stolen when he went to move it away about a week after the fire and a day after the police had left.

(11)   That plaintiff's insurance was always much less than the value of her goods and her good faith was never questioned.

(12)   That plaintiff's brother had completed the last inventory, posted the books, made all the entries and locked up the books in the iron safe on Monday night, October 17th, when the fire occurred three days later on Thursday night, October 20th.

(13)   The last inventory taken on October 17, 1920, showed rock bottom value of goods on hand over Sixty-five Hundred ($6,500.00) Dollars, and testimony shows total insurance on the goods Four Thousand, Three Hundred and Fifty ($4,350.00) Dollars.

Defendant argues vehemently that the trial judge erred in admitting evidence to show the reasons why the books and inventory were not produced.

We think this contention unfounded for three reasons:

(1)   Because the evidence was admissible under that article of the petition which alleged an offer by plaintiff to comply with all the conditions of the contract.

(2)   Because defendant itself raised the issue in its answer and replication is not permitted under our system of pleading.

(3)   Because no timely objection was made to the evidence and no request was made for a continuance, on account of surprise.

It is not necessary to negative the occurrence of facts which would constitute a breach of a promissory warranty or condition subsequent.

Knickerbocker Ins. Co. vs. Tollman, 80 Ill. 106.

Redman vs. Aetna Ins. Co., 49 Wis. 431.

While the declaration or complaint must allege performance of conditions precedent, plaintiff need not as a rule anticipate affirmative defenses either by positive or by negative allegations.

Fellman vs. Mercantile F. & M. Ins. Co., 3 Or. App. 103.

Indian River Bank vs. Hartford Ins. Co., (Fla.) 35 So. 228.

Even in jurisdictions requiring that the facts constituting performance of conditions precedent in a contract should be specially pleaded, the rule is relaxed and a general allegation of performance is held sufficient.

See Cohen vs. Ins. Co. (Del.) 95 Atl. 912.

After nearly thirty-six pages of testimony of plaintiff's witness (Tr. 1 to 36) as to how the safe was lost, and how the books contained in the stolen safe were kept, counsel on cross-examination made his first objection to the testimony which he had elicited, on the ground that it sought to broaden the pleadings, and tended to show excuse for non-performance of the warranties.

Where evidence has been received without objection, it will be too late, at a subsequent stage of the trial, to object to it as inadmissible.

Pickett vs. Bates, 3 La. An. 627; England vs. Grisson, 15 An. 304.

The admissibility of evidence given of facts not alleged should be objected to when offered, and the point reserved; otherwise, it will be considered as if it had been responsive to an allegation properly made.

Wycoff vs. Miller, 48 La. An. 476, 19 So. 478; State vs. Lundy and Riggs, 47 La. Ann. 1596, 18 So. 636; Bryan vs. Moore, 11 Mart. 26.

The testimony is admissible for the further reason that the defendant, by its answer, laid the foundation upon which such an excuse was predicated. It invited inquiry into and provoked decision on the very question which it now contends may not be considered and may not receive judicial decision.

Fellman vs. Mercantile F. & M. Ins. Co., 3 Or. App. 103, p. 114.

We think that the inventories kept by the plaintiff show substantial compliance with the Iron Safe Warranty, for it is unreasonable to require that a small millinery store in the residential section shall keep such detailed books of account as the larger merchants in the business section.

The object of the Iron Safe Clause is to protect the insurance companies against fake losses and dishonesty on the part of the insured and in this case there is nothing to suggest the slightest padding of the inventory or the least intention to be unfair to the defendant. On the contrary the record shows that plaintiff tried to comply with the contract and that she promptly offered to furnish defendant with the detailed itemized inventory of her loss which had been completed only three days prior to the fire.

The language of the insurance policy, with respect to the last preceding inventory, has been held to refer to the inventory immediately preceding the fire.

Continental Ins. Co. vs. Waugh, 60 Neb. 348, 83 N. W. 81.

Phoenix Ins. Co. vs. Stensen, 34 Tex. Civ. App. 471, 79 S. W. 867.

Clark vs. Franklin Ins. Co., 130 La. 588; 58 So. 345.

The rule that substantial compliance with the iron safe clause is all the law requires obtains in the State of Louisiana, and generally everywhere.

Monteleone vs. Travelers Fire Ins. Co., 8 Or. App. 82.

Central Glass Co. vs. German-Amer. Ins. Co., 8 Or. App. 321.

Clark vs. Franklin Ins. Co., 130 La. 584, 58 So. 345.

No particular mode of keeping books is required if the amount and value of the goods destroyed may be ascertained therefrom with reasonable certainty by a person of ordinary intelligence.

Clark vs. Franklin Ins. Co., 130 La. 584, 58 So. 345.

Central Glass Co. vs. German-Amer. Ins. Co., 8 Or. App. 321.

Monteleone vs. Travelers Ins. Co., 8 Or. App. 82.

If the books show the gross amount of sales, the ledger need not be posted each day.

Phoenix vs. American Cent. Ins. Co., 106 Miss. 145.

The purpose of the provision is accomplished if insured produces data from which the amount and value of stock at the time of the fire can be reasonably estimated.

Malin vs. Mercantile Town Mut. Ins. Co., 105 Mo. A. 625.

Scottish Union Ins. Co. vs. Moore Mill Co., 43 Okla. 370.

And it has been held that the policy will not be forfeited because a book containing the transactions of the day preceding the fire was not in the safe.

Brown vs. Palatine Ins. Co., 89 Tex. 590.

Permanent records, showing general description of goods purchased, prices, amounts of sale and cash received, held sufficient.

101 Sou. 831, London Ass. Co. vs. Pool.

Aetna Insurance Co. vs. Goldman, 134 S. E. 201.

Defendant argues that plaintiff was negligent in failing to preserve the safe and thereby to produce the books, as required by the policy. As the ruins caused by the fire were surrounded by a cordon of policemen and firemen and as plaintiff's agent, Lazard Block, was unable to open the door of the safe because the lock had melted when he tried to do so two days after the fire; as plaintiff's agent went back to move the safe a day or two after the police were removed, only to find the safe stolen, we do not think the charge of negligence well founded.

If insured has complied with the requirements of taking an inventory and keeping books, the fact that some of such books were destroyed will not invalidate the policy, where the books or documents preserved are sufficient to supply the missing information.

Western Assur. Co. vs. Redding, 68 Fed. 708.

Finkelstein vs. Virginia State Ins. Co., 4 Or. App. 154.

When it is impossible for the insured to comply with the requirements as to producing books and documents, this is generally considered a sufficient excuse for non-production.

Liverpool, etc., Ins. Co. vs. Kearney, 180 U. S. 132.

Compliance with the requirements to produce books and documents may be excused by showing that the books and papers have been destroyed, or are beyond assured's control, especially where she is able and willing to supply the deficiency by producing duplicates or otherwise.

Brumstead vs. Dividend Mutual Ins. Co., 12 N. Y. 81.

Nichols vs. Mechanics Ins. Co., 16 N. J. L. 410.

Although the controlling statute, Art. 168 of 1908, provides for "a reasonable attorney's fee for the prosecution and collection of such losses", defendant's attorney denies this liability on the ground that the Supreme Court in Thompson vs. State Assur. Co., 160 La. 683, held that it could not fix the amount of compensation due the attorney because there was no proof in the record on which to base such action.

In that case the fire insurance policy was for $2,250.00 and the attorney's fee of $250.00 was based on the total claim of $2,250.00, but the court only gave judgment for $660.00. We think that decision is not controlling in the case where the total amount claimed was recovered and all the attorney's work was necessary and helpful to the result obtained.

In the case of Randolph vs. Carroll, 27 A. 467, the court said:

"It is a rule long settled by this court that it will not be implicitly governed in regard to questions relating to the value of professional services rendered to their clients by attorneys at law, by the opinion of legal men taken in evidence; but will be guided by a conscientious estimate of the value of the services performed, and will of itself fix the amount without reference to opinions of witnesses."

Castille & Reese vs. Caffery C. R. and, R. R. Co., 48 La. Ann. 322, 19 So. 332.

Gathe vs. Broussard, 49 La. Ann. 312, 21 So. 839.

State vs. Taylor, 49 La. Ann. 319; 21 So. 516.

Cotton vs. Mock, 21 La. Ann. 687.

Succession of Wells, 24 La. Ann. 163.

Succession of Jackson, 30 La. Ann. 463.

Dinkelspiel and Hart vs. Pons, 119 La. 236, 43 So. 1018.

Succession of Rabasse, 51 La. Ann. 604, 25 So. 326.

2 Orl. App .209; 6 Orl. App. 226; 1 H. D. 155.

We think that the record in this case shows that the amount claimed, One Hundred Dollars ($100.00), is a reasonable attorney's fee for the service.

For above reasons the judgment is affirmed.

## ON PETITION FOR REHEARING

Per curiam;

While considering petition for rehearing in this matter, we noted carefully the case of Gathe vs. Broussard, et als, 49 Ann., cited in the brief of defendant's able attorney.

However, we concluded that the holding of the Supreme Court in that case as to the necessity for evidence in order to fix an attorney's fee has been overruled by the same court in Succession of Rabasse, 51 La. Ann. 590, 25 So. 326, when it held as follows:

"Jurisprudence has settled the rule and consecrated it, that the question of attorney's fees in any case where the services have been performed in the presence of the court which is called upon to decide the question, is a matter of law rather than one of fact and that it will value same as the opinion and sound discretion dictate rather than base its judgment upon the opinion of witnesses."

The ruling which was cited in the original opinion was affirmed by the Supreme Court in the case of Hunt vs. Hill, 138 La. 583, 70 So. 522.