(101 South. 152)

No. 24259.

## MANUEL v. STUYVESANT INS. CO.

(June 27, 1924.)

*(Syllabus by Editorial Staff.)*

1. Insurance &#8660;335(3) — Substantial compliance with iron safe clause, sufficient.

It is not necessary that there should have been a literal compliance with iron safe clause, and it was not essential that books should have been kept according to any particular system, nor in such a scientific manner as would satisfy an expert accountant, but books must show with reasonable certainty complete record of business transactions.

2. Insurance &#8660;335(3) — Accounting system held not to comply with iron safe clause.

Record kept by saloon keeper not showing credit sales *held* not sufficient to comply with iron safe clause, and there can be no recovery.

Appeal from Sixteenth Judicial District Court, Parish of Evangeline; B. H. Pavy, Judge.

Action by Pierro Manuel against the Stuyvesant Insurance Company. Judgment for plaintiff, and defendant appeals. Judgment annulled and set aside, and plaintiff's demand rejected.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for appellant.

R. Lee Garland, of Opelousas, and A. V. Pavy, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

OVERTON, J. In 1918 plaintiff was the proprietor of a saloon at Basile, in the parish of Evangeline. On September 17th of that year he insured the merchandise contained in the saloon for $2,500, defendant writing the policy. On the night of November 3, 1918, the merchandise insured, with the exception of a very small part was destroyed by fire. Plaintiff made proof of the loss, and demanded payment, but defendant refused to pay, whereupon plaintiff brought this suit against defendant to recover the full amount of the policy with legal interest thereon from judicial demand until paid, for 12 per cent. statutory damages, and $250 attorneys' fees.

For answer to this suit defendant avers, among other things, that the policy was breached and avoided by the failure of plaintiff to comply with that part of the iron safe clause, made a part of it, obligating

him to keep a set of books which would clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments both for cash and credit, from the date of the first inventory required to be taken by the policy, and for such time as the policy should remain in force.

[1] An inspection of the policy shows that there is made part of it the usual iron safe clause, containing a covenant binding plaintiff to keep a set of books as set forth above. The purpose of this covenant—that is, the one relative to the keeping of a set of books —was obviously to provide a means for ascertaining the amount of goods on hand at the time of the fire, should there be a fire, so that the loss, in such event, could be ascertained with reasonable correctness. It was not necessary, however, that there should have been a literal compliance with the covenant. A substantial compliance with it is sufficient. Malin v. Mercantile Town Mutual Insurance Co., 105 Mo. App. 625, 80 S. W. 56; Clark & Sons v. Franklin Ins. Co., 130 La. 584, 58 South. 345; Pouns v. Citizens' Fire Insurance Co., 144 La. 497, 80 South. 672. For there to have been a substantial compliance with the covenant it was not essential that the books should have been kept according to any particular system, nor was it necessary that they should have been kept in such a scientific manner as would satisfy an expert accountant in a large business establishment. See 2 Cooley's Briefs on the Law of Insurance, p. 1822. Thus, in the Pouns Case, cited supra, it was held that, where a small country merchant kept a day book, ledger, and cash book, but no merchandise account, but preserved his invoices, this was sufficient, the invoices serving the purpose of a merchandise account. However, the books or data kept must show with reasonable certainty a complete record of the business transactions of the insured; and if

they do not contain such a record, "so as to furnish the data necessary to enable the insurers to test the accuracy of the accounts delivered to them, or afford any satisfactory idea of the amount of goods on hand and destroyed by the fire, the insured cannot recover." See 2 Cooley's Briefs on the Law of Insurance, p. 1823.

It appears that plaintiff kept a book which contains entries of some of his purchases and also of payments made by him since the taking of the inventory required by the policy, but in many instances these entries do not show what was purchased, or for what the payments were made. It might well have been, for all that appears, and can be ascertained from the record kept, that the payments were not for merchandise received after the taking of the inventory, but for merchandise purchased and disposed of before the inventory was taken.

Plaintiff has also produced and filed in evidence some 20-odd invoices, for the purpose of supplementing the data contained in the book produced by him, and also a number of canceled checks and drafts. He has also produced a passbook in a local bank, for the purpose of showing the amount of sales made by him.

Plaintiff sold almost entirely for cash, though he did some credit business. When he sold on credit he noted the sale on a slip of paper, and put the slip in his cash drawer, making no entry of it in any book. When the bill was paid he destroyed the slip. Out of this drawer he paid the rent of the building he occupied, the salary of his clerk, and the wages of his help. If his wife needed any money out of the business, which was never much, for the living expenses of the family, he let her have it out of the cash drawer. At the close of the day's business, plaintiff, or his clerk, would withdraw the cash from the drawer, and, without making, or having made, any entry of it in any book, would put.

it in a bag and take it to plaintiff's home. On the succeeding banking day plaintiff would deposit the contents of the bag in bank, and the cashier would enter the deposit in the passbook mentioned above. Hence the daily deposits did not represent the amount of sales made during the preceding day, but (pretermitting reference to a very small amount, $7, received monthly from a subtenant), they represented the amount received from the business through cash sales and collections made, if any, on credit sales, during the preceding day, less the payment of the foregoing expenses on those days when payment thereof was made. No entry was made anywhere of the payment of those expenses; and, as the only entry made of the credit sales was on slips of paper put in the cash drawer, and as the credit slips outstanding at the time of the fire were destroyed, there is no record whatever, in any manner or form, of the credit sales outstanding when the fire occurred, nor for that matter is their amount even known.

[2] Our conclusion is that the record kept by plaintiff of his business from the taking of the inventory up to the time of the fire, is so imperfect that it is impossible to ascertain from it with any reasonable degree of certainty what stock he had on hand at the time of the fire, and therefore what his loss was. Hence there has not been a substantial compliance with the covenant and promissory warranty, made part of the policy, to keep "a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory," and therefore there can be no recovery.

Plaintiff likens his case to that of Pouns v. Citizens' Ins. Co., cited supra, but the two cases differ materially. In the Pouns Case the record kept by the insured was sufficient to enable the court to ascertain with rea-sonable certainty what the loss was, whereas in this case it is not. In other words, a more accurate and complete record was kept in the case cited than was kept in the one at bar.

For the reasons assigned, the judgment appealed from is annulled and set aside, and plaintiff's demand is now rejected and disallowed at his costs in both courts, reserving, however, to plaintiff such right as he may have to sue for the unearned portion of the premium paid.