(123 So. 295)

No. 27530.

### LUCILLE LADIES' READY-TO-WEAR, Inc., v. GLENS FALLS INS. CO.

May 20, 1929. Rehearing Denied June 17, 1929.

Henriques, Duchamp & De la Houssaye, of New Orleans, for appellant.

St. Clair Adams, of New Orleans, for appellee.

O'NIELL, C. J. This is a suit on a policy of insurance on a stock of merchandise that was destroyed by fire. The insurance company denied liability on the ground that the insured had violated the iron safe clause, viz.:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and, unless such inventory has been taken within twelve calendar months prior to the date of this Policy, one shall be taken in detail within 30 days of issuance of this Policy, or the Policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"2. The assured shall keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this Policy.

"3. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this Policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this Policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The defense was sustained, and the suit dismissed. The plaintiff has appealed from the decision.

The insurance company contends that the iron safe clause was violated in the following particulars: (1) That an inventory of the stock of merchandise was not taken either within twelve calendar months before the date of the policy or within thirty days after the issuance of the policy; (2) that the assured did not keep a set of books showing clearly and plainly a complete record of the business transacted; and (3) that the assured did not keep in a fireproof safe, or in a place not exposed to a fire which would destroy the building, such records of the business as were kept, and that some of the records were destroyed by the fire.

The store of the assured was first opened for business in the month of August. The business was that of a retail dealer in ready-made frocks, coats, coat suits, furs, hosiery, lingerie and millinery. The policy was issued on the 13th day of August, and the fire occurred nearly five months afterwards —that is to say, on the 10th of February. No inventory was taken before the date of the policy, nor was an inventory taken within thirty days after the issuance of the policy. A complete inventory answering the requirements of the policy contract, was made on the 22d of October, more than two months after the issuance of the policy, and the inventory

was kept in a fireproof safe. The inventory showed that the loss suffered by the assured exceeded the total amount of insurance on the stock of goods, and in fact the evidence shows, and the judge of the civil district court found, that the loss was greater than the total amount of insurance; but the inventory did not comply with the promissory warranty contained in the policy contract; and we are constrained to agree with the judge who tried the case that the failure of the assured to comply with that condition in the policy is "a perpetual bar to any recovery thereon." The assured contends that there was a substantial compliance with the inventory clause of the policy, in that a stock book was kept, which served the purpose of an inventory. The book contained a list of the articles of merchandise (except hosiery, lingerie and millinery) with a number opposite each article, corresponding with a number on a tag on the article itself, and showing the sale price of each article. The cost price could be determined readily, of course, by deducting the rate of profit. Each article was entered on the list when received in the store, and was checked off as soon as it was sold by drawing a circle around the number of the article sold. There is no doubt that the stock list furnished the information from which an accurate inventory could have been made, but the stock list was not an inventory, such as the policy contract called for. The manager of the store testified, on the trial of this case, that the stock list was checked and kept accurate until the 7th of February, three days before the fire; but, when he was examined under oath by the adjusters, soon after the fire, he testified that the stock list was not checked after the 25th of January, fifteen days before the fire. We are constrained to hold, therefore, that the keeping of the stock list was not a sub-stantial compliance with the duty of the assured to keep an inventory.

With regard to the keeping of a set of books, there is no dispute about the facts. When the store was first opened, a certified public accountant was employed to install, and did install, a complete set of books, consisting of a general ledger, customers' ledger, and an accounts payable ledger, all under one cover, but with separate indexes, and a purchase journal and cash book. A young woman, employee of the store, was put in charge of the books, and was shown by the certified public accountant how to keep them. She kept the books for about a month, and then another woman was employed to do the bookkeeping. She resigned in December, nearly two months before the fire occurred; and then the certified public accountant took charge of the books, with the understanding that the woman who originally had charge of the books would make daily entries of the cash sales and charges for the customers' accounts, and that the certified public accountant would send a competent bookkeeper about once a week to post the books from the sales tickets and memoranda kept by the woman. The books were kept in that way until the 26th of January, when the young woman who kept the memoranda and sales tickets quit her employment. No entries were made in the books by the certified public accountant or by any one else afterwards. The sales tickets were kept in a desk drawer, in the store, and several hundred of them were destroyed by the fire. The failure to keep the books therefore continued for a period of fifteen days immediately preceding the fire. As we have said, the records which were available after the fire showed that the loss suffered by the assured was greater than the total amount of insurance; but the books which were kept by the assured did not fur-

nish a complete record of the business transactions; and it is well settled that without such record no recovery can be had on an insurance policy containing the standard iron safe clause. Stovall v. Sterling Fire Ins. Co., 163 La. 284, 111 So. 707.

The judgment appealed from is affirmed.