(124 So. 147)

No. 29645.

**DAVIS v. NATIONAL FIRE INS. CO. et al.**

July 8, 1929. Rehearing Denied Oct. 8, 1929.

J. S. Atkinson, of Shreveport, Hardin, Hardin & Cavanaugh, of Leesville, and Alex F. Smith, of Shreveport, for appellants.

P. L. Ferguson, of Leesville, for appellee.

OVERTON, J. Plaintiff instituted suit on separate and distinct policies against each of the fire insurance companies named in the title. Two suits were filed. They were consolidated in the lower court, and brought here as one appeal. The suit against the National Fire Insurance Company was brought on a policy, effective from July 27, 1925, to July 27, 1926, for $2,500, on a stock of general merchandise, and for $500, on a one-story frame building, in which the stock was kept, and from which it was sold. The suit against the National Union Fire Insurance Company was brought on a policy, effective from August 15, 1925, to August 15, 1926, for $3,500, on the same stock of merchandise, and for $300, on the same store, including in addition the furniture and fixtures therein. Both suits include demands for 25 per cent. of the amounts of the policies sued on, as penalty for the failure to make settlement within the time prescribed by law, and also for attorney's fees, and for the unearned premiums paid on the policies. In the suit of the National Fire Insurance Company the attorney's fees sued for amount to $750, and the unearned premiums, alleged to be due, to $66.-88; while in the suit of the National Union Fire Insurance Company the attorney's fees sued for amount to $600, and the unearned premiums, alleged to be due, to $61.55.

The defense to both suits is plaintiff's alleged breach of the iron-safe clause, contained in the policies, which reads as follows:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of the issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"2. The assured will keep a set of books which shall clearly show and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory, as provided for in the first section of this clause, and during the continuance of this policy.

"3. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire proof safe at night and at all times when the building mentioned in this policy is not actually open for business; or failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

Plaintiff's store was burned between 11 and 12 o'clock at night on February 2, 1926. The loss was a complete loss of the building and

all of its contents. On the day following the fire, defendants were notified of the loss through their agency at De Ridder, La., and sent I. C. Ford, an adjuster, to adjust the loss. Ford arrived at Dido, the place of the loss, and called upon plaintiff for the production of the books and inventories. Plaintiff produced the books she kept, and an inventory taken on January 1, 1926, about a month before the fire, but failed to produce the first inventory taken or the one required in the first section of the iron-safe clause. There is no question that this inventory was taken, and that it was taken on July 1, 1925, shortly before the issuance of the policies; but, when called for, it was found to have been lost or destroyed. Plaintiff's husband, who managed the business, says that, when he went to get the insurance, he tendered the insurance agent the inventory, and that the agent replied: "It don't matter, I don't care anything about that." From this, plaintiff urges that she inferred that the inventory was of no importance, and therefore took no particular care of it. The agent says that, when the inventory was tendered him, he replied that he did not need it, and told plaintiff's husband to keep it.

When plaintiff failed to produce the inventory required by the first section of the iron-safe clause, the adjuster, before going further, required the execution of a nonwaiver agreement. One was prepared and signed in duplicate, but, through error, the name of the National Union Fire Insurance Company was omitted. The error, however, is so obvious that the name may be considered as inserted.

During the course of the examination of the books, the adjuster asked plaintiff for the invoices. The iron-safe clause did not require plaintiff to keep the invoices in an iron safe, when the store was not open for business, or in some other place that would not be exposed to a fire that might destroy the store. Plaintiff could not produce the invoices, because they were destroyed by the fire. The adjuster wanted them to verify the books, because the books then appeared to him to be of doubtful accuracy, and because plaintiff's husband had said that there might be two or three invoices that were not entered on the books. It was agreed that plaintiff should send for copies of the invoices. She did so and produced copies of all of them, except two or three. Those produced were found to have been entered in one place or another in the books.

The adjuster found that the books were so inaccurately and unsystematically kept that he could not ascertain from them what amount of goods plaintiff had in the store at the time of the fire. In fact, according to his figures, the books showed that plaintiff must have had over two-thirds more stock than she claimed to have had at the time of the fire, or than there was any reason to believe that she did have. The adjuster found, among the defects in the books, that plaintiff had so mingled cash sales with credit sales that it was impossible to tell what was sold before the inventory was taken and what was sold afterwards, and so mingled them as to give to collections on credit sales the appearance of cash received from cash sales. In fact, plaintiff's husband says that he treated all cash received, whether from collections on credit sales or from cash sales, on the same basis; that is, as cash. The effect of this was to cause confusion, since a collection treated as a cash sale indicates goods sold on the day of entry, when the goods for which the collection was made may have been sold a month or two before, and originally entered as a credit sale. Moreover, to add to the confusion, it appears that plaintiff withdrew

groceries and dry goods from the store for the use of herself and family without making any entry of the goods withdrawn.

The books have been sent to this court in the original. We have examined them, and while we do not profess to be bookkeepers or auditors, we may say that we are unable to make anything out of them; nor do we see how any one may ascertain from them, with reasonable accuracy, in connection with the inventory, the amount of goods in the store at the time of the fire. We therefore conclude that the adjuster's statement as to the condition of the books is substantially correct. We also find that there was a confusion of cash and credit sales, as stated above, and that plaintiff withdrew groceries and dry goods from the store for the use of herself and family without making any entry of the withdrawals.

█ The iron-safe clause, which forms a part of the contracts in this case, and which in this state is statutory, must be complied with, as the very terms of the clause point out, to entitle the insured to recover. Boulanger v. British Underwriters, 141 La. 461, 75 So. 207; Thompson v. State Assurance Company, 160 La. 683, 107 So. 489; Stovall v. Sterling Fire Ins. Co., 163 La. 284, 111 So. 707; Lucille Ladies' Ready-to-wear, Inc., v. Glens Falls Insurance Company (La. Sup. No. 27530), 123 So. 295.[1] While it is held that a substantial compliance with the iron-safe clause is sufficient, yet for the compliance to be substantial the records and books kept and preserved must be such as to enable the insurer to ascertain, with reasonable certainty, the amount of the goods on hand at the time of the fire, and to test with like certainty the correctness of the accounts delivered to it. Manuel v. Stuyvesant Ins. Co.,

[1] 168 La. 696.

156 La. 813, 101 So. 152; Clark & Sons v. Franklin Ins. Co., 130 La. 584, 58 So. 345; Pouns v. Citizens' Fire Insurance Co., 144 La. 497, 80 So. 672. "Where a promise in a policy of insurance is declared to be a warranty [as is the case here], the only concern of the courts, in the absence of a contrary statutory enactment, is to ascertain whether or not it has been complied with." St. Landry Wholesale Mercantile Co. v. New Hampshire Fire Insurance Co., 114 La. 146, 38 So. 87, 3 Ann. Cas. 821.

█ Plaintiff was not justified in inferring from the remark of the insurance agent, even according to her husband's version of it, that it was unnecessary to preserve the inventory called for in the first section of the iron-safe clause. Moreover, plaintiff was distinctly informed by that clause that the inventory should be preserved, and that it and the subsequent inventory should be safely kept and produced for the inspection of the insurer. Strictly speaking, plaintiff should have kept safely and should have produced the inventory. This inventory was desirable to aid in testing the correctness of the second inventory. But the case does not rest upon that point. As we have said, the books and records were so kept as to make it impossible to determine from them the amount of goods on hand at the date of the fire. This was practically the same as keeping no books at all, and was not a compliance with the second section of the iron-safe clause, which binds the assured to "keep a set of books, which shall clearly show and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit."

██ Our conclusion is that plaintiff cannot recover for the loss of the merchandise. As to the insurance on the store building and on the furniture and fixtures, a different case

is presented. Although each policy, in each instance, is written on one piece of paper, each policy contains two separate contracts—one on the merchandise and the other on the store and fixtures—each of which, in part, is governed by different rules. The iron-safe clause is applicable to the merchandise, but not to the building or to the furniture and fixtures. Stovall v. Sterling Fire Ins. Co., 163 La. 284, 111 So. 707. Therefore plaintiff is entitled to judgment against the National Fire Insurance Company for $500 on the policy on the store building, and against the National Union Fire Insurance Company for $300 on the policy on the store building and on the furniture and the fixtures. While plaintiff has asked for 25 per cent. penalty against each defendant, she concedes that she is entitled, under the ruling made in Stovall v. Sterling Fire Ins. Co., to only 12 per cent. penalty in each case, as provided by Act 168 of 1908. She is entitled to that much, under the ruling and under the act mentioned. Defendants admit that $500 would be a proper attorney's fee to allow in each case, in the event of the recovery of the amounts sued for. This is the only evidence on the question of attorney's fees. We have, however, rejected the demand in each case for insurance on the merchandise. The attorney's fees should therefore be reduced. We have concluded to allow them with some regard to the admission and to the reduction of the amount of insurance sued for. We shall therefore fix the amount of the attorney's fees at $70 against the National Fire Insurance Company, and $50 against the National Union Fire Insurance Company.

The trial court rendered judgment for plaintiff, in each case, as prayed for, except that 12 per cent. penalty was allowed in each and $500 attorney's fees. This judgment will have to be amended so as to correspond with the views herein expressed.

The judgment appealed from in the case against the National Fire Insurance Company is amended by reducing the amount of the insurance allowed from $3,700 to $500, by making the 12 per cent. penalty and 5 per cent. interest allowed bear on the judgment as here reduced, and by reducing the attorney's fees allowed from $500 to $70, and, in all other respects, the judgment in that case is affirmed; and the judgment in the case against the National Union Fire Insurance Company is amended by reducing the amount of insurance allowed from $3,800 to $300, by making the 12 per cent. penalty and 5 per cent. interest allowed bear on the judgment as here reduced, and by reducing the attorney's fees from $500 to $50, and, in all other respects, that judgment is affirmed, appellee to pay the costs of appeal.

(124 So. 150)