153 So. 695

# LA HOOD v. NATIONAL UNION FIRE INS. CO.

No. 32109.

Feb. 26, 1934.

Rehearing Denied March 26, 1934.

Hardin & Coleman, of Shreveport, for appellant.

Pegues & Pegues and W. Crosby Pegues, Jr., all of Mansfield, for appellee.

LAND, Justice.

Plaintiff has resided in the town of Mansfield, La., during the last fifteen years and has conducted a mercantile business there.

The stock of merchandise of plaintiff was damaged by a fire in that town on May 20, 1931. Considerable damage was done to the stock by fire, smoke, and water.

This is one of eight suits against eight fire insurance companies on eight different policies. The total amount sued for in all the cases is $12,500. In addition thereto, plaintiff claims 12 per cent. on the amount as damages for failure to settle insurance claims within sixty days after due proof of loss, and reasonable attorney's fees in each case.

The cases were consolidated for trial in the lower court. The policy in this suit is for $2,000. The other policies are for a lesser amount.

The trial court rendered judgment in this case for the face of the policy, $2,000, with 10 per cent. penalty as attorney's fees. A similar judgment was rendered in each of the other cases, except one, in which recovery was denied. From the judgment in this case, defendant has appealed to this court. In the other cases, defendants have appealed from the judgments rendered against them to the Court of Appeal, where the decision in this case is awaited.

(1) Defendant urges and submits that the iron-safe clause of the policy herein sued on has been breached and violated in the following respects:

First, that plaintiff has failed to take a complete, correct, and itemized inventory of his stock of merchandise.

Second, that plaintiff has failed to keep a set of books clearly showing a complete record of business transactions, including all purchases and sales, both for cash and credit.

Third, that plaintiff has failed to keep his records in a fireproof safe or some other place not exposed to fire.

Fourth, that plaintiff has failed to produce his inventory taken January 1, 1930, and certain other records of his business.

Fifth, that the policy herein sued upon is null and void because of fraud or attempted fraud on the part of plaintiff.

On the other hand, plaintiff denies the above charges made by defendant, and asserts that the iron-safe clause was substantially complied with.

■ (2) The charge by defendant that the inventory dated January 1, 1931, was false, padded, and fraudulent is not borne out by the evidence in the case.

The inventory, on its face, shows the various items and quantities of merchandise on hand, and the cost prices opposite each, which total the sum of $13,093.32.

These various items, quantities, and cost prices were called out by plaintiff to his bookkeeper, J. N. Laney, who took them down on slips of paper at the time, which were afterwards copied on the inventory sheets filed in this case.

Mr. Laney testifies that the inventory is correct as to its contents, and plaintiff testifies that each article was counted or measured, and the cost price tagged thereon was called out, at the time the inventory was taken.

It is true that the footing of the total amount of the inventory, which was made by Mr. Laney, is stated to be $20,009.14. This is, manifestly, a clerical error or mistake.

Plaintiff at no time has claimed that the inventoried value of his stock of merchandise on hand, at the time of the fire, was the sum of $20,009.14.

There is a vast difference between fraudulently inserting in an inventory merchandise that is not on hand, and a mere mistake in figures in arriving at the total value of the items therein stated. This error was readily detected by the adjusters of defendant company, and no deception or fraud resulted from, or was intended by, the mistake.

Nor are we of the opinion that fraud is indicated by the mere fact that the inventory of 1931 shows mostly whole lots and not broken lots. This condition resulted from the fact that plaintiff and his assistants, in measuring bolts of cloth, disregarded the overplus in inches, and merely stated the total number of yards. Also if plaintiff had only—say—11 cans of corn, he would add a can of tomatoes to make an even dozen.

In the case of Pouns v. Citizens' Fire Insurance Co., 144 La. 498, 80 So. 672, it is said: "Learned counsel for defendant now criticize it (the inventory) because consisting mostly of full barrels, cases, and dozens instead of partly emptied barrels, and broken cases and dozens, as might be expected of the stock of a country store; but, such as it was, it had been made in good faith; and since it was good enough for the issuance of the policy and the payment of the premium, it ought to be good enough for the settlement of the loss."

■ (3) The charge that plaintiff did not keep his records in an iron, fireproof safe is also not borne out by the facts, which show that, after the fire, plaintiff went to his safe on the insured premises and extracted therefrom all of the books and papers filed in evidence in this case. (Ev. 7.)

■ (4) The charge also that plaintiff has willfully failed to produce for inspection his prior inventory taken January 1, 1930, is without merit in our opinion.

The inventories for 1930 and 1931 and the other books and papers taken from the safe by plaintiff were promptly delivered by him, at their request, to the adjusters of the various companies at a hotel in Mansfield, La.

Thereafter, plaintiff was notified by the adjusters to call at the hotel for these documents and to produce them at a later date. He did so, and had all of the inventories, etc., on the rear seat of his automobile when he stopped, on his way returning home, at the office of his attorney. He had been accompanied by one of the adjusters in another automobile.

Upon arriving at home, plaintiff discovered that the 1930 inventory was missing from his papers. He immediately telephoned to his attorney, and asked if he had left the document at his office, and did everything in his power to locate it.

From the facts before us, we are not in a position to say that plaintiff purposely misplaced the inventory, any more than we would feel justified in saying that one of the adjusters kept the inventory for the purpose of setting up such a defense, should the companies deny liability in these cases.

Be that as it may, defendant, in paragraph X of its answer, avers: "* * * That your respondent is informed, and believes, and, so believing, alleges as a fact that the plaintiff

herein took an inventory of his stock on January 1, 1930, which probably reflected the amount of merchandise on hand as of January 1, 1930. * * * "

The case of Davis v. National Fire Insurance Co. et al., 169 La. 63, 124 So. 147, 148, is not in point, as the facts stated therein are different from the facts as to the production of the inventory of 1930 in the present case.

In the Davis Case it is said: "On the day following the fire, defendants were notified of the loss through their agency at De Ridder, La., and sent I. C. Ford, an adjuster, to adjust the loss. Ford arrived at Dido, the place of the loss, and called upon plaintiff for the production of the books and inventories. Plaintiff produced the books she kept, and an inventory taken on January 1, 1926, about a month before the fire, but failed to produce the first inventory taken or the one required in the first section of the iron-safe clause."

■ It is true that the iron-safe clause must be complied with to entitle the insured to recover.

It is also equally true that, under the facts of this case, it would be highly technical, and gravely unjust, to deny to plaintiff the right to recover, after the production of the inventory of 1930 for inspection, in the absence of convincing proof that he intentionally lost, or fraudulently destroyed, that document.

■ (5) The serious issue in this case, however, is the charge by defendant that plaintiff has failed to keep a set of books clearly showing a complete record of business transactions, including all purchases and sales, both for cash and credit.

As to the doctrine of substantial compliance invoked by plaintiff in this case, it is said in Davis v. National Fire Insurance Co. et al., 169 La. 63, 124 So. 147, 149: "While it is held that a substantial compliance with the iron-safe clause is sufficient, yet for the compliance to be substantial the records and books kept and preserved must be such as to enable the insurer to ascertain, with reasonable certainty, the amount of the goods on hand at the time of the fire, and to test with like certainty the correctness of the accounts delivered to it. Manuel v. Stuyvesant Ins. Co., 156 La. 813, 101 So. 152; Clark & Sons v. Franklin Ins. Co., 130 La. 584, 58 So. 345; Pouns v. Citizens' Fire Insurance Co., 144 La. 497, 80 So. 672."

Plaintiff produced, at the trial, a ledger, two so-called cash books, the inventory of 1931, and some McCaskey credit sale slips, totaling $480.60. These slips are for various years, some for 1929, some for 1930, and some for 1931.

In the report of plaintiff to R. G. Dunn & Co., of date January 11, 1931, is contained the following statement: "Outstanding Accounts (credit sales) good .............. $4,000.00."

There are no entries of the McCaskey slips in plaintiff's books at all.

From January 1, 1930, to September 25, 1930, the elder Corley was bookkeeper for plaintiff. From September 25, 1930, to November 6, 1930, Roy Corley, his son, was plaintiff's bookkeeper; and from that time, until the date of the fire, May 20, 1931, J. N. Laney kept plaintiff's books.

Plaintiff testified that he had always carried a large stock of goods, and that, during

the year, 1931, he conducted principally a cash business, and did only a small credit business, "maybe 150."

When a customer came in and bought goods on a credit, plaintiff would use these Mc-Caskey register slips. He would make out the record in duplicate, give the purchaser one slip and put a copy in the register. When the purchaser returned to pay, plaintiff would surrender to him the copy in the register, and then punch the amount in the register, and that would be considered as cash sales for that day.

Mr. Laney, bookkeeper for plaintiff, testified that plaintiff kept no book record of the McCaskey credit sales, except the tickets in the register, and that, when they were paid, they would be entered in the cash sales.

We quote the following questions propounded to Mr. Laney and his answers:

"Q. From any records that were kept, can you tell the amount of outstanding accounts?

"A. Just from these slips here.

"Q. That is the only record he had?

"A. Yes, sir.

"Q. Those slips represent accounts that are outstanding today?

"A. Yes, sir.

"Q. They do not represent the amount that was outstanding on January 1, 1931?

"A. No, sir. There is no way to figure that amount now. I do not know of any way of figuring it now; as I understand it, the only record he had of the credit sales was these McCaskey slips." (Ev., p. 54.)

The younger Corley, plaintiff's bookkeeper, also testified that plaintiff's merchandise credit account was made through the McCaskey cash register and, when payment was made, it went through the cash register.

He testified that, as bookkeeper, he never even saw the McCaskey records.

Plaintiff testified that he got all of the groceries, clothes, and shoes for his family, consisting of his wife, himself, and his two children, out of the store, and that he estimated the cost at $100 per month.

Plaintiff admits that he kept no record of that.

In Davis v. National Fire Insurance Co. et al., 169 La. 63, 124 So. 147, 148, it is said: "In fact, plaintiff's husband says that he treated all cash received, whether from collections on credit sales or from cash sales, on the same basis; that is, as cash. The effect of this was to cause confusion, since a collection treated as a cash sale indicates goods sold on the day of entry, when the goods for which the collection was made may have been sold a month or two before, and originally entered as a credit sale."

The court then added: "Moreover, to add to the confusion, it appears that plaintiff withdrew groceries and dry goods from the store for the use of herself and family without making any entry of the goods withdrawn."

(6) Now as to record of cash sales.

Mr. Laney, bookkeeper for plaintiff, testifies that there is no record of cash sales from October 30, 1930, until January 1, 1931.

He did not close plaintiff's books at the end of 1930, and made no entries in the merchandise account of the amount of the inventory at the end of 1930.

Mr. Roy Corley, bookkeeper of plaintiff from September 25, 1930, to November 6, 1930, testifies that the entries in the cash book of date September 3, 5, 8, 11, 12, 13, 14, 16, 17, 22, 23 and 24, 1930, were entries from plaintiff's bank books, and that was the only record of the cash sales that plaintiff kept.

Sometimes, there was a delay of a week in posting these sales but, usually, they were posted every three or four days.

Mr. Corley states that, while he was keeping plaintiff's books, from September 25, 1930, to November 6, 1930, when Mr. Laney took charge, the only record that plaintiff had of cash sales was his bank deposits shown by the cash book.

Mr. Corley kept a record of cash paid out for current expenses, but there were no salaries or anything like that included. These expenses were just for freight and such as that. Insurance accounts and other things were posted as to these accounts.

In keeping a record of cash sales, no record was kept of the total amount that would go into the cash register each day. So, the cash entry for each day would be the total that went into the cash drawer, less the cash taken out for purchases, etc. Besides, the cash collected from credit sales was mingled with the cash collected from cash sales.

Plaintiff's books were so loosely kept that there was nothing to show what money taken in during the day was paid on previous credit purchases, and what was paid on purchases for cash. It is now simply impossible to arrive at the gross amount of sales, and hence to ascertain what merchandise was still on hand at the date of the fire.

Plaintiff's record of cash sales to October 31, 1930, is represented only by his bank deposits, and his last bookkeeper, Mr. Laney, used practically the same system for his cash sales during the months of January, February, March, April, and May, 1931.

It cannot be contended, except in a Pickwickian sense, that bank deposits reflect, with accuracy, cash sales, and constitute substantial compliance, in this respect, with the iron-safe clause.

As said by this court in Stovall v. Sterling Fire Insurance Co., 163 La. 284, 111 So. 707, 708: "And however liberal this court may have been in accepting records, which though informally and irregularly kept, yet did in fact afford such information as might suffice to establish the amount of goods on hand at the time of the fire, nevertheless we have always insisted that:

" 'The books or data kept must show with reasonable certainty a complete record of the business transactions of the insured; and if they do not contain such a record, " * * the insured cannot recover." ' Manuel v. Stuyvesant Ins. Co., 156 La. 813, 101 So. 152."

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that plaintiff's demands be rejected and that plaintiff's suit be dismissed at his costs.

ST. PAUL, J., absent.