GLADNEY, Judge.
This suit was instituted by plaintiff, Gibson’s Tri-State Wholesale, Inc., to recover upon a policy providing insurance for fire and extended coverage issued on November 1, 1959 by the defendant, Scottish Union & National Insurance Company, through James Fortner, its local agent. James Fortner was named as a co-defendant. After issue was joined the case was tried on its merits with the question of liability involving two principal issues, the first being whether the policy was in effect at the time of a fire which caused plaintiff’s business a severe loss on July 11, 1960, and the second, assuming the policy to be effective at the time of the fire, being whether the insured violated the provisions of the “iron safe clause” and thereby forfeited its right of recovery. The trial judge did not pass on the first issue, but rested his decision upon the second issue, holding that plaintiff violated the provisions of the “iron safe clause” and such violation was a bar to recovery under the policy. Accordingly, plaintiff’s demands were rejected in toto and it has lodged an appeal in this court
During the latter part of 1959 plaintiff established a mercantile business in West Monroe, and on November 1, 1959, caused James Fortner to issue to it two fire and extended coverage insurance policies, each providing for a maximum liability of $42,500.00. Coverage was granted by Scottish Union & National Insurance Company and by the Birmingham Fire & Marine Insurance Company. This suit is only concerned with the policy issued by the defendant company. The policy in question contained a “value reporting clause” which required the insured to report in writing to the company not later than thirty days after the last day of each calendar month, the exact locations covered thereunder, the total cash value at each location, and all specific insurance in force at each of such locations on the last day of each calendar month.
George S. Kausler, Ltd. of New Orleans, the general agent for Scottish Union & National Insurance Company, on December 1, 1959, sent James Fortner a telegram notifying him that his agency was suspended and advising him not to commit the company to further liability “in any form or under any condition”. During the trial Fortner testified he did not remember receiving the telegram but that he did know that his employment as local agent for the company was terminated.
In February 1960, James Fortner ceased operating as a local insurance agent, withdrew from the insurance exchange in Monroe, and began working for the Indiana Lumbermen’s Mutual Insurance Company as a full time fieldman or state agent. Fortner no longer had authority to solicit business and execute policies for the Scottish Union & National Insurance Company, *125 but lie continued to collect premiums on insurance policies which he had previously sold, and in the case of plaintiff’s policy, he continued to secure periodic inventory reports. Fortner apparently obtained six reports from Alton Howard, the directing head of plaintiff corporation, which Fort-ner mailed to the insurance company’s general agency in New Orleans. George S. Kausler, Ltd., however, became concerned about the delinquency of these reports and the obvious inaccuracy of the values represented and sent two letters to Fortner, dated June 2 and June 21, 1960, in which it complained about the reports and threatened to cancel the policy with plaintiff unless accurate reports were received promptly. Fortner telephoned Howard and conveyed to him the company’s concern about the reports and Howard immediately gave Fortner information which was mailed to the company within two or three days from receipt of the last letter. On June 24, 1960, the general agents for Scottish Union & National Insurance Company mailed to plaintiff a notice of cancellation of the policy. In this notice, on a line which states, “per * * * agent,” the following appears: “Jim Fortner Insurance Agency, George S. Kausler, Limited — General Agents.” This notice provided that at the expiration of five days from its receipt the policy would terminate and ceasa, to be in force. Alton Howard testified this notice was probably received by his office Saturday, June 25th, but that he did not read it until Monday. Howard telephoned Fort-ner, who was out of town at that date but returned the call on Friday, July 1st. Fort-ner testified that he received no notice of the cancellation of Howard’s policy, did not recall that Howard mentioned to him that he had received a notice of cancellation, and that he, Fortner, assumed Howard was inquiring about the periodic reports. Fort-ner assured Howard his policy was still in effect.
On July 11, 1960, a fire destroyed substantial quantities of the merchandise in plaintiff’s West Monroe store. Plaintiff made demand upon Scottish Union & National Insurance Company for payment under the policy and the insurance company denied liability, contending that the policy was no longer in effect. The present litigation resulted.
It is the contention of plaintiff that the effect of the cancellation notice was waived by Fortner, who was apparently the agent of the insurer at the time, and, alternatively, plaintiff asserts that if Fortner was not, in fact, the agent of the insurer at the time of the waiver, then he was its apparent agent clothed with apparent authority to represent it, and for this reason the Scottish Union & National Insurance Company is estopped to deny his agency.
The principal defense tendered by the defendant is that the insured violated the “iron safe clause” as contained in the policy. The judge a quo, Barham, predicated his opinion upon plaintiff’s failure to comply with the requirements of the “iron safe clause”, and denied recovery to plaintiff. After a careful examination, his opinion meets with our full approval and we adopt with approval the following reasons advanced by the court:
“The Scottish Union and National Insurance Company policy sued upon herein by plaintiff contains a standard iron safe clause which provides as follows :
“ ‘Iron Safe Clause. Warranty to keep books and inventory and to produce them in case of loss.
“ ‘The following. covenant and warranty is hereby made a part of this policy:
“ T. The insured will take a complete inventory of stock on hand at least once in each calendar year and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon *126 demand of the insured the unearned premium from such date shall be returned.
“ ‘2. The insured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.
“ ‘3. The insured will keep books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or failing in this, the insured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.
“ ‘In the event of failure to produce such books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to recovery thereon.’
“Both defendants have alleged that plaintiff violated the ‘iron safe clause’ in the following particulars:
“ ‘a. In failing to take and preserve an inventory as required by Paragraph 1 of the iron safe clause and
“ ‘b. In failing to keep a set of books which clearly and plainly present a complete record of business transacted including all purchases, sales and shipments, both for cash and credit, from date of inventory, as contemplated by Paragraph 2 of the iron safe clause, and that this failure and breach of warranty would render the policy null and void if otherwise in effect and would constitute a perpetual bar to recovery thereon.’ ”
j{í Hi ‡ * SÍS ifc
“As to the contention that no inventory is required, it is well settled law within this State and fairly generally followed throughout the United States, that an inventory must have been taken within a twelve-month period preceding the issuance of the insurance policy or within (30) thirty days after the issuance of the policy if no previous inventory within the twelve calendar months has been made.
“In the suit of Lucille Ladies’ Ready-to-Wear, Inc. v. Glens Falls Ins. Co., 168 La. 696, 123 So. 295 (1929) in the Supreme Court, the plaintiff had opened a business in the month of August. The policy was issued on the 13th day of August and the fire occurred nearly five months afterward on the 10th of February. No inventory was taken before the date of the policy nor within thirty days after the issuance of the policy. In that case, however, a complete inventory answering requirements of the policy contract was made on October 22nd, more than two months after the issuance of the policy. And further, in that case, it was admitted that the loss was greater than the total amount of insurance. But Chief Justice O’Niell found:
*“ * * * But the inventory did not comply with the promissory warranty contained in the policy contract; and we are constrained to agree with the judge who tried the case that the failure of the assured to comply with that condition in the policy is “a perpetual bar to any recovery thereon.” The assured contends that there was a substantial compliance with the inventory clause of the policy, in that a stock book was kept, which served the purpose of an inventory * * * There is no doubt that the stock list furnished the information from which an accurate inventory could have been made, but the stock list was not an inventory, *127 such as the policy contract called for *
“Recovery was denied therein in a case which is much stronger than in the present case in that an inventory was prepared late and that a stock book was kept rather than merely invoices.
"This case answers squarely the argument of counsel for plaintiff on pages 18 and 19 of brief in which plaintiff urges that an inventory was not required since not more than a calendar year had elapsed from the date of the issuance of the policy until the fire.
“Plaintiff cites the cases of St. Landry Wholesale Mercantile Co. v. Teutonia Insurance Co. of New Orleans, 113 La. 1054, 37 So. 967 (1905) and Istrouma Mercantile Co., Inc. v. Northern Assurance Co., Ltd. of London, 183 La. 855, 165 So. 11 (1935). In both of these cases the fire occurred less than thirty days after the issuance of the policy and the court merely held that the insured has the thirty days within which to make the inventory and that lack of inventory in case of loss prior to that thirty-day grace period will not bar recovery.
“Quoting from the Istrouma Mercantile Company case, supra:
“ ‘A mere reading of the clause referred to shows conclusively that the contract is in full force and effect for the full thirty days after the issuance thereof, and it becomes null and void from such date (after the thirty-day period) in the event that the inventory provided for has not been taken within the prescribed time (thirty days of the issuance of the policy), and we must give it that effect. St. Landry Wholesale Mercantile Co. v. Teutonia Ins. Co., supra.’
“These cases actually emphasize the bar to recovery if the inventory is not provided prior to the expiration of the thirty-day period.
“Judge Overton has been the instrument of the Supreme Court in a number of cases interpreting the ‘iron safe clause’ and defining ‘substantial compliance’ therewith. In Gershon v. North River Ins. Co., 177 La. 148, 148 So. 10, 11, 92 A.L.R. 368 (1933) Judge Overton cites previous decisions and1 summarizes the law:
“ ‘The iron-safe clause must be complied with substantially to entitle the insured to recover. Such is the contract between the parties. The reasonableness of the clause and its binding effect have been recognized by this and other courts repeatedly. It is a necessary clause in a fire insurance policy on stock in trade, to the end that a just settlement of the loss may be made, should the merchandise insured be destroyed by fire during the term of the policy. Davis v. National Fire Insurance Co., 169 La. 63, 124 So. 147; Stovall v. Sterling Fire Insurance Co., 163 La. 284, 111 So. 707; Lucille Ladies’ Ready-to-Wear, Inc. v. Glens Falls Insurance Co., 168 La. 696, 123 So. 295; Thompson v. State Assurance Co., Ltd., 160 La. 683, 107 So. 489; Manuel v. Stuyvesant Ins. Co., 156 La. 813, 101 So. 152; St. Landry Wholesale Mercantile Co. v. New Hampshire Fire Ins. Co., 114 La. 146, 38 So. 87, 3 Ann.Cas. 821; Germier v. Springfield Fire & Marine Insurance Co., 109 La. 341; 33 So. 361; Royal Insurance Co. v. Kline Bros. & Co. (C.C.A.) 198 F. 468; Southern Fire Insurance Co. v. Knight, 111 Ga. 622, 629, 630, 36 S.E. 821, 824, 52 L.R.A. 70, 78 Am.St.Rep. 216.
“ ‘Since the requirement as to the making and preserving of an itemized inventory is a part of the iron-safe clause, which is material in ascertaining the loss in the event of fire, it follows that the foregoing authorities are pertinent to show that the failure to-make and preserve the inventory, insubstantial accord with the clause, is *128 fatal to the right to recover on the policy.’
“Knowles v. Dixie Fire Insurance Co., 177 La. 941, 149 So. 528 (1933) follows the Gershon case and re-emphasizes the law.
“Plaintiff cites the following cases in support of the argument that only substantial compliance is required: Manuel v. Stuyvesant Ins. Co., 156 La. 813, 101 So. 152 (1924); LaHood v. Nat’l. Union Fire Ins. Co., 179 La. 213, 153 So. 695 (1934); Davis v. National Fire Ins. Co., 169 La. 63, 124 So. 147 (1929); Grady v. Indiana Lumbermen’s Mutual Ins. Co. of Indianapolis, Ind., 135 F.2d 714 (5th Cir.1943).
“Then plaintiff states in brief: ‘Although the Court in several of the above cases actually ruled in favor of the insurance company and against the insured, they nevertheless clearly hold that only substantial compliance with the ‘iron safe clause’ is required. Actually all four cases ruled in favor of the insurance company and held that substantial compliance had not been met in any of the cases. (Emphasis ours). These four cases actually deal with the substantial compliance required in the keeping of books.
“The issue squarely presented to the Court in this case is whether or not substantial compliance with the taking of an inventory as required by the ‘iron safe clause’ has been met by plaintiff. The only substantial compliance that could be argued by plaintiff herein is that he had kept invoices of the merchandise purchased and that these would suffice for an inventory in this case.
“Plaintiff cites Pouns v. Citizens’ Fire Insurance Co., 144 La. 497, 80 So. 672 (1919) as authority for the use of invoices in substitution for the inventory required by the ‘iron safe clause’. The Pouns case was decided in 1919 and involved a fire occurring on the 21st day after the issuance of the policy. Justice Provosty found that in a small country store for such a period of time the file of invoices should supplant the inventory. (Note that under the jurisprudence later established in this State in Istrouma Mercantile Co. v. Northern Assurance Co., Ltd. of London, (1935), supra, that this decision would have been rendered simply on the basis that the fire had occurred within the thirty-day grace period and no inventory was required.) This case cites Ruffner Bros. v. Dutchess Ins. Co., 59 W.Va. 432, 53 So. [S.E.] 943, 115 Amer. State Reports, 924, which is not jurisprudence in this State and actually has been refuted by the Courts of this State by the direct requirement of an inventory after the thirty-day grace period. Plaintiff cites Phenix Insurance Co. v. Dorsey, 102 Miss. 81, 58 So. 778 (1912), and Day v. Home Insurance Co., 177 Ala. 600, 58 So. 549, 551 [40 L.R.A.,N.S., 652] (1912), both being cases outside of this jurisdiction, both having been decided in 1912, and any law stated therein has been refuted by the jurisprudence of this State cited supra. Further the Day case, an Alabama decision, does not substantiate plaintiff’s theory, but rather negates it.
“ ‘No case that we have seen goes to the length of holding a series of separate invoices, covering a considerable period of time during which many transactions may have been had, may by the insured be made to do service for the itemized inventory demanded by the insurer as a condition of liability and yielded by the insured in the beginning as a legitimate and reasonable stipulation.’
“The Court therein further takes to task the Ruffner case and the Queen of Arkansas case:
“ ‘The adjudications in these cases seem to take liberties with the contracts *129 which the parties had made for themselves *
“It is clearly the law of Louisiana that the insured must furnish an inventory taken ‘within twelve calendar months prior to the date of the policy, or one must he taken within thirty days of the issuance of the policy.’
“In Gershon v. North River Ins. Co., supra, the Court defines inventory as follows: ‘The inventory contemplated by those instruments was an itemized one from which the quality, quantity and amount of the various articles in the store could be determined as of a date when the inventory was taken.’
“The Court is of the opinion that the ‘iron safe clause’ contains three different provisions and that the failure to comply with any one provision is a bar to recovery. The Courts have at times in their decisions combined the requirement for inventory with the requirement for a complete record of business or bookkeeping methods. The Court finds herein that the first provision of the ‘iron safe clause’, having been violated by the plaintiff, there is a total bar to recovery. The Court further believes the law is and should be, since this is true, that the consideration of the bookkeeping practices will have no effect upon this decision.
“However, since the Courts in the past have joined the two provisions at times and have discussed both in reaching their decision, we will pass upon the question of whether or not the company kept the books and records necessary to comply with the ‘iron safe clause’. The standards which should be met in the keeping of records and books should be that standard comparable for the type of business being operated which would reflect accurately to third parties the amount of loss incurred in case of fire. The standard cannot be merely that it is acceptable to the owners of the business and susceptible to interpretation by them.
“In the instant case the greatest difficulties with the bookkeeping method of plaintiff are (1) in the handling of inter-store purchases and transfers; (2) in the lack of books which would reflect items purchased for resale, items purchased for re-shipment and items purchased for operation; (3) in the use of an assumed gross profit percentage rather than a computed or actual gross profit percentage; (4) in the use of dates which referred to invoicing time rather than arrival time of merchandise. The cases cited by plaintiff and defendant have barred recovery indicating that any one of the failures above listed would be sacramental to recovery. The failure of plaintiff to provide those bookkeeping methods necessary to fulfill the contractual obligation of the insurer’s policy deny recovery. Particularly if we are to read the inventory clause and bookkeeping clause together will the Court’s finding be substantiated in that lack of inventory plus these vital errors in bookkeeping procedure make it impossible to find the contractual obligation fulfilled.
“The Court finds no actions on the part of the defendant which would effectively estop the defendant from the pleading as a bar to recovery the ‘iron safe clause’.
“The Court is of the opinion that since the law effectively bars recovery for the above assigned reasons as to both defendants, that there is no reason to pass upon the issue of cancellation of the policy which might affect one defendant but not necessarily both defendants.
“For the reasons herein assigned, let there be judgment herein for and in *130 favor of the defendants of and against the plaintiff, dismissing plaintiff’s suit at its costs.”
The judgment is affirmed at appellant’s cost.