LOTTINGER, Judge.
Petitioner, Aaron Wallace, instituted this suit to recover from defendant, Hanover Insurance Company of New York, the sum of $6,000.00 representing the amount of insurance afforded by a policy of fire insurance issued him on April 28, 1960. Petitioner also claims statutory penalties, attorney fees and interest. The Lower Court awarded judgment in favor of petitioner and against defendant for the sum of $6,-000.00, together with twelve (12%) per cent statutory penalties, $1,000.00 attorney fees and interest at the rate of five (5%) per cent per annum from July 3, I960,, plus all costs. The defendant filed a suspensive appeal.
The record discloses that petitioner was the owner and operator of a saloon known as the Canopy Club, in the Parish of Tangi-pahoa, Louisiana. On April 28, 1960, petitioner purchased from defendant a fire insurance policy covering the stock, consisting of liquor, wine, beer and soft drinks contained in the one story building occupied as a saloon. The policy was originally written for the sum of $3,500.00, however, by endorsement dated June 10, 1960, the amount of insurance was increased by $2,-500.00 so as to bring the total amount of insurance up to the sum of $6,000.00. On July 3, 1960 a fire occurred in the premises destroying all of the stock of merchandise. The insurance company was notified, and, although there are certain disputes between the parties relative to the conduct of the ensuing investigation, the company refused to pay the loss because of petitioner’s failure to produce an inventory, or other documents, sufficient to determine the amount of loss. Petitioner then filed this suit to which the defendant first filed a plea of prematurity. The Lower Court overruled the plea of prematurity, and the defendant then filed answer. The question presented upon this appeal is the sufficiency of the records *389 kept by petitioner particularly those which are required under the "iron safe clause”, of the insurance policy.
The “iron safe clause” as contained in the policy of insurance provides as follows:
“Warranty to keep books and inventories and to produce them in case of loss. The following covenant and warranty is hereby made a part of this policy:
“1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.
“2. The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in first section of this clause, and during the continuance of this policy.
“3. The assured shall keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.
“In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void and such failure shall constitute a perpetual bar to any recovery thereon.”
There is filed into the record of this proceeding six journal sheets, a composition book, cancelled checks, and Louisiana Sales Tax returns which make up what is evidently the entire bookkeeping system of the petitioner. In addition thereto on four tablet sheets is contained what purports to be an inventory of the stock of the Canopy Club as of January 1, 1960. Between the date of the said inventory and the date of the fire, which occurred on July 3, 1960, is-a sheet of paper containing the amounts of merchandise purchased and sold for the-months of January, February, March, April, May and June of the year 1960. According: to this document, the petitioner claims that the merchandise in stock as of the date of the fire was in the sum of $7,475.00.
The record discloses that both the petitioner and his wife had very little education. They testified that each day, Mrs. Wallace would make a list of the merchandise purchased and sold by their saloon, and that, at the end of each month, these figures would be given to Mr. D. E. Gwinn who acted as their bookkeeper. The journal sheets and the other documents which were filed into evidence indicate to us that the system of bookkeeping used was most lackadaisical. Included in these records, which were charged to purchases, was a check made to Louis Schwartz in the sum of $150.00 for a sewing machine, a second check to Mr. Schwartz dated March 8, 1960 in the sum of $150.00, upon which the notation had been scratched over, certain checks to refrigeration companies, evidently for refrigeration repairs, checks to hardware companies, and checks to the Louisiana Department of Revenue. These checks were all included in the journal column devoted to purchases of merchandise, which certainly indicates that the records maintained by the petitioner were inadequate to determine the amount of stock he had in trade on the date of the fire.
*390 Defendant contends in brief as well as in oral argument that the documents filed herein reflect the following:
“The journal purports to show the purchases both by cash and check, the sales and the deposits. On the last page, plaintiff attempts to show the inventory by the following computation:
“ ‘Inventory at beg.-$ 2,192.10
Merchandise purchased — 15,309.66
$17,501.76
Less Sales- 9,962.11
Inv---$ 7,539.65’
“At once it is evident that such figures are not in keeping with the figures originally submitted by the assured and reflected in D-3 where the total purchases were said to be $12,250.00 and the total merchandise sold $4,775.00. The merchandise in stock of $7,475.00 shown on that exhibit as a result of the deduction of the sales from purchases, is surprisingly close to the figure contained in the journal of $7,539.65. There can be no doubt but that D-3 was prepared by plaintiff and his wife. (Tr. pp. 19, 24, 55.)
“Looking closely at the Journal P-4 and the Composition book P-3, which was the monthly record of cash purchases and sales, reveals that the cash purchases total $7,378.25. If the cash purchases figure is deducted from the total merchandise (purchased and inventory) figure of $17,501.76, the check purchases set forth in the journal would amount to $10,123.51. If you deduct from that figure the total sales -figure,, as reported in the composition book and transcribed on the journal, of $9,962.11, there remains a balance of $161.40 without taking into consideration any expenses which have not been deducted. A more visual approach demonstrates the point:
Total purchases and inventory-$17,501.76
Less cash purchases- 7,378.25
Check purchases- 10,123.51
Sales. 9,962.11
Balance-$ 161.40
“The foregoing computation demonstrates why the books and records must fully reflect the business transacted. Records which attempt to show in globo unsupported cash purchases totalling $7,378.25 cannot be accepted as complying with the requirements of the policy.”
Although we have taken into consideration the meager education of the petitioner, we certainly feel that his system of books was not sufficient to show any reasonable proof as to the amount of stock on hand at the date of the fire.
In Manuel v. Stuyvesant Ins. Co., 156 La. 813, 101 So. 152, the Court in upholding a defense under the “iron safe clause” stated as follows:
“It appears that plaintiff kept a book which contains entries of some of his purchases and also of payments made by him since the taking of the inventory required by the policy, but in many instances these entries do not show what was purchased, or for what the payments were made. It might well have been, for all that appears, and can be ascertained from the record kept, that the payments were not for merchandise received after the taking of the inventory, but for merchandise purchased and disposed of before the inventory was taken.”
The Court then further held as follows:
“Our conclusion is that the record kept by plaintiff of his business from the taking of the inventory up to the time of the fire is so imperfect that it is impossible to ascertain from it with any reasonable degree of certainty what stock he had on hand at the time of the fire, and therefore what his loss was. Hence there has not been a substantial compliance with the covenant and promissory warranty, made part of the policy, to keep ‘a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and ship- *391 merits, both for cash and credit, from date of inventory,’ and therefore there can be no recovery.”
We feel, therefore, that the petitioner has failed to produce such a set of books as is required by the insurance policy, and, accordingly, the judgment of the Lower Court will be reversed and petitioner’s suit dismissed.
For the reasons hereinabove assigned, the judgment of the Lower Court is reversed and, accordingly, there is judgment herein dismissing petitioner’s suit at petitioner’s cost.
Judgment reversed.